Dougal W.S. PRINS, Plaintiff,

v.

INTERNATIONAL TELEPHONE AND
TELEGRAPH CORP., et al.,
Defendants.

Civ. A. No. 89–1761(CRR).

United States District Court,
District of Columbia.

Feb. 26, 1991.

88

Jenelle C. Prins–Stairs and Brian C. Plitt, Washington, D.C., for plaintiff.

David J. Branson and Richard E. Wallace, Jr. of Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for defendant Intern. Telephone and Telegraph Corp.

John B. McCrory, Robert C. Bernius and Elizabeth M. Ahern of Nixon, Hargrave, Devans & Doyle, Washington, D.C., for defendant Globe Newspaper Co.

## OPINION

CHARLES R. RICHEY, District Judge.

This is a libel and slander case in which the plaintiff alleges that he was defamed by his former employer International Telephone and Telegraph Corporation ("ITT") and by the Boston Globe ("Globe"). Reduced to its simplest terms, this lawsuit revolves around the meaning and legal effect of the word "fired." However, as the veritable avalanche of papers already filed in this case attests, when viewed in context and examined under the microscope of defamation law, that five-letter word has potentially far-reaching consequences which render the issues in this case far from simple. Moreover, the presence of two defendants with potentially overlapping but certainly not identical positions and defenses further complicates matters. Each of the defendants has filed a summary judgment motion, and the plaintiff has filed a motion for partial summary judgment as to ITT's liability. The Globe and the plaintiff also each filed a motion appealing some of Magistrate Judge Robinson's discovery rulings. In this omnibus Opinion, the Court will address these five motions in turn, denying all of the summary judgment motions and reversing some discovery rulings.

### I. Background

Although certain material facts remain in dispute on this record, the following facts are, for the most part, undisputed. The plaintiff used to be an executive for an ITT subsidiary, ITT Gilfillan, that was involved in defense contracting. At the end of

March or the beginning of April 1987, ITT informed the plaintiff that his position had been eliminated as part of a reduction in executive personnel. Depending on which contentions one believes, either the plaintiff and ITT parted company on amicable terms and by mutual agreement because ITT was reducing overhead and did not have another position of sufficient responsibility available for the plaintiff or ITT terminated the plaintiff against his wishes. In any event, the plaintiff continued to receive his salary for some time, received generous separation benefits under ITT's executive termination policy, and had access to an office within ITT, office files, and secretarial support until September 1987.

In June 1987, in the meantime, ITT, ITT Gilfillan, and an ITT Gilfillan employee (Edward Vicenzi) were indicted for, *inter alia*, conspiring to defraud the United States by paying illegal gratuities to Air Force officials in return for proprietary information that could be used to ITT's advantage in the preparation of bids on Air Force contracts. The indictment made the plaintiff —Vicenzi's supervisor for some, if not all, of the period in which he was engaged in illegal activity—out to be an unindicted coconspirator, naming him several times and alleging that he ordered the destruction of some of Vicenzi's files after a federal search warrant had been executed at Vicenzi's residence. Vicenzi eventually pled guilty to some of the charges in the Indictment, and subsequently ITT pled guilty to one count of conspiracy on October 24, 1988 in the United States District Court for the District of Massachusetts. At the hearing in which the court accepted ITT's guilty plea, the government's proffer of proof included an allegation that the plaintiff had ordered the destruction of Vicenzi's files and that the plaintiff, when asked by his superior why he done that against earlier orders, responded, "Nixon's mistake was that he didn't burn the tapes." Globe Summary Judgment Motion, Ex. C (Plea Tr. at 13).

The next day, October 25, 1988, under the headline "ITT executives are faulted in fraud case," the Globe printed an article which reported on the guilty plea and the background, summarized parts of the government's proffer at the hearing, and stated that ITT was attempting to distance itself from wrongdoing by blaming its former employees. *See id.*, Ex. A. Towards the end of the article, the newspaper named the plaintiff as Vicenzi's direct supervisor and quoted the "Nixon's mistake" statement attributed to him at the plea hearing. Finally, the article stated, "Both Peterson [another ITT Gilfillan employee who the article said made an incriminating statement] and Prins have since been fired, Gallagher said." *Id.* The author obtained most, if not all, of the information contained in the article by examining court records, attending the plea proceeding, and interviewing Jim Gallagher, an ITT spokesman, and other ITT executives after the proceeding.

The plaintiff complains that the term "fired"—standing alone but especially when taken in context—was false and defamatory by implying that he had been summarily discharged for cause for improper activity when he had in fact been terminated with generous benefits for the neutral reason of a corporate restructuring. Moreover, the plaintiff presents some evidence that the article injured his reputation and prevented him from obtaining employment in his field of defense contracting or marketing.

## II. Analysis

The Court recognizes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). However, none of the three summary judgment motions currently before the Court may be granted unless the moving party can show that there is "no *genuine* issue of *material* fact," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986) (emphasis in original), though burdened by the rule that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 255, 106 S.Ct. at 2513. Moreover, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. With these principles in mind, the Court holds that it cannot grant any of the summary judgment motions and "that the better course would be to proceed to a full trial." *Id.* at 255, 106 S.Ct. at 2513.

### A. Plaintiff's Summary Judgment Motion

■ The plaintiff's motion for partial summary as to ITT's alleged liability is the easiest to resolve. Relying upon evidence supplied by the Globe reporter who wrote the article (Frederic Biddle), the plaintiff contends that the following transpired in the interview between Biddle and ITT spokesman Gallagher: (1) the two men were discussing various former ITT employees who had been allegedly connected with the illegal activities giving rise to ITT's guilty plea and were no longer with ITT; (2) Gallagher stated that the plaintiff's job had been eliminated in a restructuring; and (3) then Gallagher said "yes" when Biddle specifically asked him if that meant that the plaintiff had been "fired." However, ITT vigorously disputes the plaintiff's (and Biddle's) version of what Gallagher said in that interview, pointing out that Gallagher has consistently testified, by way of deposition and affidavit, that he never stated or confirmed that the plaintiff had been fired. Thus, even assuming *arguendo* that ITT's statement under these circumstances that the plaintiff was fired could be sufficient to render ITT liable for defamation, the Court is faced with the most genuine issue of material fact possible—whether ITT ever stated or confirmed that the plaintiff was "fired." Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge," *id.,* the Court must deny the plaintiff's motion for partial summary judgment and allow a jury to determine what Gallagher said to Biddle about the plaintiff.

### B. ITT's Summary Judgment Motion

Although it vigorously denies that Gallagher ever said or confirmed that ITT had fired the plaintiff, ITT takes the position (entirely appropriate and not inconsistent in this posture of the case) of assuming for the purposes of its own summary judgment motion that Gallagher did use, or at least adopt, the term "fired." Then, ITT argues that, notwithstanding the use of that word, it is entitled to judgment as a matter of law because a statement that somebody has been fired, whether standing alone or in this kind of context, is not defamatory. Moreover, ITT contends that the government's allegations of misconduct—levelled against the plaintiff in the indictment and in open court at the plea hearing and repeated in the Globe article—were substantially true and were so serious that they, rather than the statement about his being fired, constituted the defamatory "sting" of the article.

■ A plaintiff bringing a defamation action (libel or slander) must show: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant "published" the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *See Restatement (Second) of Torts* § 558, at 155 (1977); *see also Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 682–83 (D.D.C.1989) (citing *Restatement* ). Only the first element is at issue here.

■ Assuming *arguendo* that ITT did say or confirm that it fired the plaintiff, the Court must determine whether that statement is capable of bearing a defamatory meaning. *See Tavoulareas v. Piro,*

817 F.2d 762, 779 (D.C.Cir.) (en banc) ("it is the role of the court to determine whether the challenged statement is 'capable of bearing a particular meaning' and whether 'that meaning is defamatory'" (quoting *Restatement (Second) of Torts* § 614(i), at 311 (1977))), *cert. denied*, 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987). A statement is defamatory "'if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.'" *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293–94 (D.C.Cir.) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C.1984)), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). The parties have argued back and forth over whether a statement, standing alone, that a person has been fired can be defamatory as a matter of law, with the defendants apparently getting the better of the dispute. *See, e.g., Davis v. Ross*, 754 F.2d 80, 84 (2d Cir.1985) ("the mere statement of discharge from employment does not constitute libel"). On the other hand, the plaintiff has presented some evidence tending to prove that, even if the term "fired" standing alone is not defamatory to the general public, in the defense contracting or marketing industry (where the plaintiff worked for ITT and sought employment after he departed ITT) that term has a more negative connotation carrying harmful consequences.

 However, the Court need not resolve that issue to decide ITT's summary judgment motion because here the statement that the plaintiff was fired—assuming it was made—was definitely not standing alone. As the en banc Court of Appeals for this Circuit has counseled, a court making the determination of whether a statement is capable of bearing a defamatory meaning must "consider both the words themselves and the entire context in which the statement occurs." *Tavoulareas*, 817 F.2d at 779; *see also McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800 F.2d 1208, 1213 (D.C.Cir.1986) ("[a] publication 'must be considered as a whole' for its defamatory potential" (quoting *Howard Univ.*, 484 A.2d at 989)). Gallagher and Biddle were engaged in a discussion that was directly related to ITT's immediately preceding guilty plea, and, drawing all justifiable inferences in the plaintiff's favor, Biddle clearly was trying to determine what had become of the various ITT employees who had been connected to Vicenzi's and ITT's illegal activity. Moreover, considering the ITT representative's statement at the plea hearing that anybody who had anything to do with the illegal activities was no longer with the company and the government's allegations against the plaintiff, it was understandable for the Globe reporter to try and dig beneath the "euphemism" (his word) to learn whether the plaintiff had been discharged for a neutral reason or for having been involved in improper activity. Thus, while it is conceivable that a jury could conclude that ITT's statement about the plaintiff being fired was not defamatory under the circumstances present in this case, the Court cannot preclude as a matter of law the possibility that a reasonable jury could find that the statement injured the plaintiff in his business or reputation. *See Dow Jones*, 838 F.2d at 1294 ("'It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot reasonably be understood in any defamatory sense that it can rule as a matter, that it was not libelous.'" (quoting *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C.1964))).

 The Court also rejects ITT's other theory, that the gist or "sting" of the allegedly defamatory imputation—namely the government's allegations about the plaintiff's misconduct and its naming him as an unindicted co-conspirator, not the inaccurate statement that he was fired—was substantially true. ITT correctly notes the general legal proposition that a defendant may attack the falsity prong of the plaintiff's *prima facie* case by demonstrating the substantial truth of the statement. In other words, literal truth is not required, and a "showing of the truth of the 'gist' or 'sting' of the allegedly defamatory imputation is sufficient." *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir.1987); *see also Tavoulareas*, 817 F.2d

at 788; *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990); *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 302 (2d Cir.1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987).

However, the Court disagrees with ITT's assessment of the extent of the sting in this case. The following comparison (similar to the analysis that the *Guccione* and *Vachet* courts undertook) shows that the published statement about the plaintiff having been fired was not merely an "inoffensive detail[ ] of secondary importance." *Vachet*, 816 F.2d at 316. Under the circumstances of this case, one accurate way of summarizing what occurred would have been to discuss the government's allegations against the plaintiff and state that the plaintiff no longer works for ITT because his position previously had been eliminated as part of a corporate restructuring.[1] As the plaintiff correctly points out, under this scenario, he would have been "stung" somewhat by the government's allegations, but they would have been nothing more than allegations not substantiated in a court of law and not implicitly supported by his employer's decision to fire him. By comparison, ITT's statements about the plaintiff carried a much more powerful sting. They could reasonably be construed as implying a link between the government's charges against the plaintiff

and ITT's adverse personnel action, thus placing this powerful corporation's imprimatur upon the government's unsubstantiated allegations.

This is not merely a semantic difference and is not comparable to a minor inaccuracy that is immaterial to the truth of the defamatory statement. *Compare AIDS Counseling*, 903 F.2d at 1004–05; *Vachet*, 816 F.2d at 316; *Guccione*, 800 F.2d at 302–03. In short, the Court simply cannot say as a matter of law that "the published statement [here, ITT's statement that it fired the plaintiff—made in the context of the government's serious allegations against the plaintiff] could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation." *Guccione*, 800 F.2d at 302.[2]

### C. Globe's Summary Judgment Motion

There is substantial, but by no means complete, overlap between the defendants' two summary judgment motions. The Globe makes the same two arguments as ITT: (1) that the term "fired" is not defamatory, whether standing alone or taken in context and (2) that the article was substantially true because the government's allegations—not the "fired" statement— constituted the defamatory sting. For the reasons discussed above with regard to

1. Although the record contains allusions to possible defense arguments that ITT let the plaintiff go because it knew about his involvement in the improprieties or that ITT clearly would have fired him for cause if he had still been an employee when the government indicted ITT, in considering the defendants' summary judgment motions the Court must draw the inference in the plaintiff's favor and assume for now that ITT terminated him for a neutral reason (a corporate restructuring) rather than for his alleged involvement in improper activity.

2. ITT and the Globe argue that the Court may not allow the plaintiff to combine other non-actionable statements (the government's allegations) with a non-defamatory, non-actionable statement that he was fired to make out a *prima facie* case of defamation. However, this argument is fatally flawed because, although a report fairly and accurately summarizing the government's allegations against the plaintiff in its indictment and in open court is not actionable, *see Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739–40 (D.C.Cir.1985) (discussing "fair report privilege"), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *see also infra* pp. 93–94 (same), neither the Court nor a jury may evaluate whether a statement is defamatory without taking into account the context in which the statement was made. Unfortunately for all the parties in this case, the term "fired" is a linguistic chameleon whose meaning changes to fit its surroundings, and therefore the context in which the term was used assumes special importance in this case. In making its ruling, the Court is not holding the defendants accountable for the government's allegations. Rather, the Court is merely: (i) acknowledging the significance of context; (ii) refusing to wear horse-blinders in evaluating the defendants' statements about the plaintiff; and (iii) holding that the "fired" statement was not immaterial like the false details deemed insignificant by the Fourth Circuit in *Aids Counseling*, 903 F.2d at 1004–05.

ITT's summary judgment motion, the Court again rejects those arguments.

■ One argument raised in the Globe's summary judgment motion that ITT did not make is a variation of the truth defense: regardless of the plaintiff's and ITT's euphemisms, the plaintiff was essentially terminated for cause. To support this argument, the Globe relies upon: (1) statements made by ITT's representative at the plea hearing to the effect that those employees who engaged in the illegal activity did so in direct contravention of corporate policies and that any employee involved in the illegal activity was no longer with ITT; (2) ITT's answers to interrogatories that the plaintiff violated ITT policies by ordering the destruction of Vicenzi's documents, making the "Nixon's mistake" statement, and approving Vicenzi's expense records; and (3) testimony by an ITT executive that the plaintiff would have been terminated for cause once ITT was indicted if his position had not been fortuitously eliminated one month earlier. However, the Globe overlooks the plaintiff's evidence—which is more than a "scintilla" and must be construed in his favor—tending to prove that he was terminated for a neutral reason. In short, although this argument may prove successful when presented to a jury, the evidence on the issue of whether the plaintiff was essentially fired for cause presents a genuine issue of material fact.

■ Finally, the Globe's summary judgment motion differs from ITT's in that the Globe clings to the life preserver of the "fair report privilege," a common law conditional privilege available to anybody who publishes a fair and accurate report of an official governmental proceeding. *See Dameron v. Washington Magazine, Inc.,* 779 F.2d 736, 739 (D.C.Cir.1985) (citing *Phillips v. Evening Star Newspaper Co.,* 424 A.2d 78, 88–90 (D.C.1980), *cert. denied,* 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981)), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *see also Restatement (Second) of Torts* § 611, at 297 (1977). As the *Dameron* court explained:

[T]he intended beneficiary of the privilege is the public, not the press. *The privilege is not simply a convenient means for shielding the media from tort liability.* Rather, the privilege springs from the recognition that in a democratic society, the public has both the right and the need to know what is being done and said in government— even if some of that is defamatory."

*Dameron,* 779 F.2d at 739 (emphasis added). Consequently, the fair report privilege does not protect the publisher of a report if it is so garbled or fragmentary that it leads to a false imputation about the plaintiff or is otherwise unfair or inaccurate. *Id.* Moreover, this privilege applies only if the report properly attributes the allegedly defamatory statement to the official government record or proceeding. *Id.; see also Phillips,* 424 A.2d at 89; *Bufalino v. Associated Press,* 692 F.2d 266, 271 & n. 4 (2d Cir.1982), *cert. denied,* 462 U.S. 1111, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983).

■ Under the weight of these principles, the Globe's fair report privilege argument sinks like a stone. Those parts of the Globe article that fairly and accurately summarize the court proceeding at which ITT pled guilty and the government's statements made during its proffer of evidence would be privileged. However, on its face, the article reveals that the allegedly defamatory statement at issue here—"Both Peterson and Prins have since been fired, Gallagher said"—falls outside of the scope of the fair report privilege. *See Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 537 (7th Cir.1982) (statements in an article that were "fair and accurate republications of statements made in the government documents were covered by the privilege"; however, "[t]he remaining defamatory statements in the article ... could be the basis of liability"), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). Instead of summarizing a statement made in a official government record or proceeding, this "fired" statement is attributed to the *ITT spokesman* whom the Globe reporter interviewed *after* ITT's guilty plea in open court. Although the statement may be attributed to the correct source and

may be an accurate summary of what the ITT spokesman said, as the attribution itself demonstrates, it is not a summary of an official government proceeding or document and therefore is not protected by the fair report privilege.[3]

### D. Globe's Motion for Reconsideration

In a July 27, 1990 Memorandum Order Magistrate Judge Robinson denied the Globe's Motion to Strike Plaintiff's Supplemental Answer to the Globe's Interrogatory No. 2. In this interrogatory, the Globe asked the plaintiff to set forth each statement in the article that he alleges was false. The plaintiff's initial response was that the "fired" statement was false. Long after discovery had closed and shortly after the Globe had filed its summary judgment motion in which it argued, *inter alia*, that the plaintiff had conceded the truth of those parts of the article setting forth the government's allegations against the plaintiff, the plaintiff amended his response to Interrogatory No. 2. Contending that he had reasonably interpreted the interrogatory to ask about which statements were *actionable* rather than *false*, the plaintiff supplemented his response to allege that five additional statements or implications, though not actionable, were false: (1) the statement that the plaintiff had Vicenzi's files destroyed; (2) the statement that the plaintiff had Vicenzi's files destroyed against orders; (3) the statement that the plaintiff made the "Nixon's mistake" statement; (4) the implication that the plaintiff was fired for wrongdoing; and (5) the implication that the plaintiff was Vicenzi's supervisor during the time when he engaged in illegal activity. The Globe complained that this supplemental answer should be stricken because it added new claims to the plaintiff's complaint; was not "seasonable" within the meaning of Fed.R. Civ.P. 26(e); and prejudiced the Globe in that the new allegations arose after the completion of discovery.

Although the Magistrate Judge considered and rejected each of these arguments, the Globe has filed a motion for reconsideration with the Court. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 503(b). Except with regard to one relatively minor point, the Court agrees with the Magistrate Judge's ruling and will deny the Globe's motion for reconsideration in large part.

■ First, the Magistrate Judge correctly rejected the Globe's argument that, by supplementing his answer to Interrogatory No. 2, the plaintiff is adding new claims to his Complaint. If the Globe expected this litigation to focus only on the one sentence about the plaintiff being fired without considering the rest of the 21–paragraph article, then it had an unreasonably cramped understanding of what courts and juries must examine in defamation cases. Regardless of the plaintiff's interrogatory answers, the context of an article that contains an allegedly defamatory statement is clearly relevant. *See Tavoulareas*, 817 F.2d at 779; *McBride*, 800 F.2d at 1213; *Howard Univ.*, 484 A.2d at 989. Thus, by suing the Globe for defamation for publishing the "fired" statement, the plaintiff necessarily placed the context of the entire article in issue. Moreover, the Globe's protestations of surprise are disingenuous at best because the substance of most of the supplemental answers already had been alleged in the Complaint. *See* Complaint ¶¶ 13–18, 22–24, 32, 37. In short, the Court agrees with the Magistrate Judge and with the plaintiff that his supplemental answers to Interrogatory No. 2 do not add new claims.

■ Second, the Court cannot hold that the Magistrate Judge made a ruling that was clearly erroneous or contrary to law when she concluded that the plaintiff's amendment of his interrogatory response was "seasonable" within the meaning of Fed.R.Civ.P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response

---

**3.** This is not a situation in which the allegedly privileged statement was part of an official proceeding and then repeated by an ITT spokesman. It is undisputed that the government's proffer at the plea proceeding did mention the plaintiff's employment status and that the ITT representative made only a general statement that anybody who had anything to do with the illegal activities was no longer employed by ITT.

[to a discovery request] if the party obtains information upon the basis of which ... the party knows the response was incorrect when made ..."). The plaintiff's explanation for his omission—misinterpreting "false" statements to mean "actionable" statements—is plausible,[4] and the record contains no indication of bad faith on the part of the plaintiff. Furthermore, the plaintiff did not delay once he discovered his earlier misunderstanding, filing his supplementary answers to the interrogatory on March 2, 1990, no more than one week after the Globe filed its summary judgment motion.

■ Finally, although the Court agrees with the Magistrate Judge's ruling that the plaintiff's supplementary responses do not prejudice the Globe, it holds that preventing the Globe from conducting further discovery would be unfairly prejudicial. The clearly erroneous aspect of the Magistrate Judge's "prejudice" analysis arises in the following sentence:

> [M]ost important, the Globe will not be required to conduct additional discovery concerning the statements, because ITT has already agreed to produce any documents concerning plaintiff's alleged wrongful conduct which it may decide to use at trial, and to make available for deposition any witness who may testify with respect to such documents, at least 30 days prior to trial.

July 27, 1990 Mem. Order at 3–4 (Robinson, Mag. J.). If the defendants' trial strategies and defenses necessarily were identical, then making the Globe's discovery depend on what it's co-defendant ITT plans to present at trial might be proper. However, as the foregoing discussion of the various summary judgment motions reveals, the Globe's and ITT's defenses and interests—though overlapping—are by no means identical and to some extent will probably be diametrically opposed.[5] Therefore, the scope of the Globe's discovery should not be inextricably tied to ITT's trial strategy. In addition, the Court's conclusion that the Globe should be permitted to conduct further discovery is buttressed by two other considerations: (1) although not adding new *claims*, the plaintiff's supplemental answers to Interrogatory No. 2 did arguably add a new *theory* that the Globe perhaps did not anticipate in relying on the plaintiff's initial answers and (2) the plaintiff does not oppose the Globe's request for the time to conduct additional discovery. Thus, the Court will deny the Globe's motion for reconsideration, except that it will permit additional discovery.

### E. Plaintiff's Motion for Reconsideration

■ The plaintiff has filed a motion for reconsideration of the Magistrate Judge's rulings denying his motion to compel certain discovery that he seeks from ITT. The discovery requests—which seek sensitive information that could potentially embarrass ITT and to which ITT strenuously objects—can be divided into two general categories: (1) seven interrogatories requesting information about how ITT dealt with its other employees, those who remained and those who left the corporation for reasons related or unrelated to the improper activities that led to ITT being in-

---

4. This not entirely obvious distinction between statements that are false and the statement that is actionable exists because of the fair report privilege. *See supra* n. 2 and pp. 93–94. The plaintiff recognizes that, although he may protest that the government's allegations against him in the indictment and in open court were completely false, he may not hold the defendants liable for fairly and accurately reporting those statements. In other words, the government's allegations may be false but at the same time a statement that the government made those allegations in a court proceeding open to the public would be true and not actionable if it

fairly and accurately summarized the allegations.

5. For example, a reasonable jury could rule in ITT's favor yet hold the Globe liable by finding that the ITT spokesman never used or adopted the term "fired" in his discussion with the Globe reporter. Under this scenario, which focuses closely on what precisely was said in the Gallagher–Biddle interview, the Globe and ITT would have inconsistent defenses. This scenario is not at all far-fetched since ITT has repeatedly argued that its spokesman Gallagher never used or adopted the term "fired" but stated only that the plaintiff's position had been eliminated.

dicted[6] and (2) two interrogatories and three document requests seeking information about the plaintiff's allegedly wrongful conduct at ITT.[7] The Magistrate Judge denied the plaintiff's motion to compel, *see* March 5, 1990 Order; July 27, 1990 Mem. Order (denying motion for reconsideration), concluding that he was requesting information and documents not relevant to the issues in this case and that therefore the discovery requests were not reasonably calculated to lead to the discovery of admissible evidence as required by Fed.R.Civ.P. 26(b)(1).

Having carefully reviewed all of the papers submitted on these discovery disputes and the Magistrate Judge's orders, together with the parties' summary judgment motions and the entire record herein, the Court concludes that the decision to deny the plaintiff's motion to compel was, for the most part, clearly erroneous. The Magistrate Judge's orders reveal two faulty premises that fundamentally affected her conclusions: (1) the Magistrate Judge overlooked the Globe's important role in this lawsuit (perhaps because this was a discovery battle between the plaintiff and ITT without the Globe's involve-

ment) and (2) as discussed above regarding ITT's motion for reconsideration, she relied too much on ITT's representations that it would provide the plaintiff, thirty days before trial, with any documents concerning the wrongful conduct allegations that ITT decided to use at trial.

Even if ITT never raises a substantial truth defense at trial, never argues—even implicitly—that any of the government's allegations about the plaintiff's wrongful conduct were true, and goes so far as to stipulate that the plaintiff was not fired for cause, the plaintiff still must address the Globe's defenses, which (judging from its papers) include a substantial truth defense and the argument that the plaintiff was "essentially" fired for cause, or would have been fired for cause once his allegedly wrongful conduct came to light. To rebut these arguments, the plaintiff needs to prove that his departure from ITT was not a firing for cause and would not have become one when the government indicted ITT.[8] Of course, any testimony already given by ITT witnesses and any ITT documents concerning separation benefits already produced will assist the plaintiff in

---

**6.** For the sake of brevity, the Court will summarize rather than quote each of the seven interrogatories: Int. # 2 seeks the identity of each ITT employee fired for cause due to his or involvement with the fraud case discussed in the Globe article; Int. # 3 concerns the benefits and other "perks," if any, that ITT afforded the employees identified in Int. # 2; Int. # 4 asks about the method of ITT's termination of for four named individuals (former employees allegedly involved in the fraud case); Int. # 5 attempts to ascertain whether any of the former employees named in Int. # 4 received any of the benefits identified in Int. # 3 and the extent of those benefits; Int. # 6 requests the salaries, bonuses, raises, and awards given to each ITT executive between grades 17 and 21 for the years 1985–89; Int. # 22 asks for information concerning any communications made by ITT regarding the plaintiff's employment qualifications; and Int. # 25 seeks the identities of all persons ˙ whose positions were eliminated and/or who accepted benefits under ITT's executive separation policy at ITT Gilfillan between 1986 and 1988.

**7.** As summarized, these interrogatories and document requests state the following: Int. # 31 seeks the identities of all ITT employees reprimanded between 1985 and 1988 for failure to follow ITT policies and practices for keeping

expense records; Int. # 38 requests the identities of all consultants that ITT Gilfillan employs or has employed since 1984 for supporting business development or contractual activities; Doc. Request # 13 seeks all documents, including internal investigations and reports, relating to the plaintiff's alleged destruction of Vicenzi's files; Doc. Request # 18 asks for all documents reflecting the plaintiff's allegedly wrongful conduct—namely destroying Vicenzi's documents, making the "Nixon's mistake" statement, and approving expense records in violation of ITT policy; and Doc. Request # 20 seeks all documents (including personnel and salary records) for the ITT consultants described in Int. # 38.

**8.** Although the Court would prefer that this lawsuit not become a forum for the parties to litigate the government's allegations against the plaintiff, they do constitute the entire framework of the allegedly defamatory statement at the heart of this case, and the Globe's arguments place them squarely at issue. Therefore, the Court cannot conclude at this time that the plaintiff's strategy of rebutting the Globe's arguments by relying, *inter alia,* on documents and information obtained from ITT would necessarily be ineffective, improper, or duplicative.

proving this point. However, his case on this issue could be strengthened, significantly and his chances for successfully countering the Globe's arguments greatly increased if the plaintiff were to present evidence comparing his amicable separation (complete with handsome benefits and other "perks") with the summary termination without benefits of those other ITT employees for their involvement in wrongful activities. Moreover, the plaintiff is entitled to try to rebut the Globe's arguments by showing that he never engaged in the wrongful conduct as the government and certain ITT witnesses have alleged.[9] Thus, when viewed in light of the foregoing discussion, it is clear that, with one exception, the discovery requests do not seek irrelevant information.[10]

Before leaving the relevance question, the Court concludes that Interrogatory No. 6 does not seek information that appears reasonably calculated to lead to the discovery of admissible evidence. This interrogatory requests a very broad range of information—salaries, raises, bonuses and awards of thousands of ITT employees over a five-year-period—having only the most tenuous connection with any issue in this case.[11] Whereas the information sought by the other disputed discovery requests is relatively narrow in scope and/or closely related to the plaintiff's "comparative" argument that he plans to make to rebut the Globe's substantial truth defense, the information requested by Int. #6 is exceedingly broad and would add little, if anything, to the plaintiff's argument. In view of the great burden that responding to this interrogatory would impose upon ITT and the slim likelihood that the information sought would lead to admissible evidence, the Court will not require ITT to answer Interrogatory No. 6.

Having already determined that the plaintiff's other disputed interrogatories and document requests are not improper on relevance grounds, the Court will briefly consider ITT's other objections. Although relevance apparently was ITT's main objection and clearly was the focal point of the Magistrate Judge's rulings, ITT also objected—without much elaboration—to some of the discovery requests on the grounds of privilege, confidentiality, undue burden, and vagueness and overbreadth.

The Court recognizes that some of the documents and information sought were generated as part of ITT's internal investigation of wrongdoing conducted by, *inter alia*, ITT attorneys and therefore may be protected by the attorney-client and/or work product privileges. However, that does not necessarily hold true in all instances because: (1) some of the documents requested, such as the expense reports, are simply regular business records and are

9. Contrary to the Magistrate Judge's conclusion, the plaintiff's ability to succeed in this endeavor and rebut the *Globe's* substantial truth arguments should not depend upon *ITT's* tactical decisions about which documents, if any, it intends to use at trial and its "largesse" in producing those documents, if any, thirty days before trial. ITT may decide not to make a substantial truth argument and may even agree to stipulate that the plaintiff was terminated as part of a restructuring and not for any improper conduct, but none of the foregoing would prevent the Globe from making the not implausible argument that the plaintiff essentially was, or would have been, fired.

10. The proper relevance inquiry must focus not only the narrow issues between the parties involved the discovery dispute (here the plaintiff and ITT) but must encompass the entire subject matter of the lawsuit. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding *any matter*, not privileged, which is *relevant to the*

*subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery *or to the claim or defense of any other party ...*" (emphasis added)); Fed.R.Evid. 401 (defining relevance as "tend[ing] to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence"). By concentrating on what arguments and defenses *ITT* may raise at trial, the Magistrate Judge failed to realize that the information sought by almost all of the discovery requests at issue here could lead to the discovery of admissible evidence that would be relevant to the *Globe's* possible argument that the plaintiff essentially was, or would have been, fired for wrongdoing.

11. Int. #6 states: "Identify the salary, bonus, awards, and raise given to each executive between the grade of 17–21 for the years 1985–89, and any policy or practice with regards [sic] to bonus and raise determinations."

not privileged; (2) the plaintiff has stated on the record that he waives the attorney-client privilege as to any documents or information arising out of interviews between him and ITT attorneys; (3) some aspects of ITT's investigation allegedly were conducted by non-attorney employees in the regular course of business; and (4) ITT apparently released some, if not all, of the documents and information concerning the plaintiff's alleged wrongdoing to the government, which constitutes an implied waiver of both the attorney-client and work product privileges.[12] Thus, the Court will require ITT to comply with the plaintiff's discovery requests and respond fully—except to the extent that pieces of information and documents sought are properly covered by the attorney-client or work product privileges—in accordance with the foregoing guidelines.

ITT's other objections require little discussion at this point. First, the plaintiff has undercut ITT's concerns about confidentiality by stating on the record that he would agree to abide by a protective order. Second, the Court concludes that, with the exception of irrelevant and burdensome Interrogatory No. 6 which the Court has already held need not be answered, the other disputed discovery requests would present no more of a burden to ITT than should be expected in any hotly contested civil action requiring extensive discovery. Finally, having carefully considered each of the disputed discovery requests, the Court holds that, when read in the context of the record compiled herein, none of them are so vague or unduly broad that ITT should be excused from responding as required by the Federal Rules of Civil Procedure.

### III. Conclusion

Because none of the parties has demonstrated the absence of a genuine issue of material fact, the Court will deny all three summary judgment motions. In addition, the Court will deny the Globe's motion for reconsideration of certain Magistrate Judge rulings, except that it will grant the Globe's request for an opportunity to conduct additional discovery concerning the plaintiff's supplemental interrogatory answers. Finally, the Court will grant the plaintiff's motion for reconsideration of the Magistrate Judge's decision denying the plaintiff's motion to compel, except that ITT need not respond to the plaintiff's Interrogatory No. 6 and ITT need not produce any document or piece of information that is *presently* protected by a *valid* claim of the attorney-client or work product privileges. The Court will give the parties sixty days to complete any and all further discovery in accordance with this Opinion. Each party shall bear its own costs associated with bringing and opposing the various discovery and summary judgment motions discussed herein.

The Court will issue an Order of even date herewith in accordance with the foregoing Opinion.

### ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 25 day of February, 1991,

ORDERED that the Plaintiff's Motion for Partial Summary Judgment as to Liability of International Telephone and Telegraph Corporation ("ITT") shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendant ITT's Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendant Globe Newspaper Company's

---

12. As the United States Court of Appeals for this Circuit has stated in holding that, by disclosing a company document to the government, the company waived the attorney-client privilege as to all other communications relating to the same subject matter:

> [I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels. Short of court-compelled disclosure or other equally extraordinary circumstances, we will not distinguish between various degrees of "voluntariness" in waivers of the attorney-client privilege.

*In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir. 1989). Moreover, this doctrine of implied waiver also applies in the context of the work product privilege. *See, e.g., In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982).

("Globe") Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Globe's Motion for Reconsideration of certain of Magistrate Judge Robinson's discovery rulings shall be, and hereby is, DENIED insofar as it seeks an order striking the plaintiff's supplemental interrogatory answer and GRANTED insofar as it seeks an opportunity for the Globe to conduct discovery concerning those supplemental interrogatory answers; and it is

FURTHER ORDERED that the plaintiff's Motion for Reconsideration of certain of Magistrate Judge Robinson's discovery rulings shall be, and hereby is, GRANTED insofar as it seeks to compel ITT to respond to certain discovery requests and DENIED insofar as it seeks to compel ITT to respond to the plaintiff's Interrogatory No. 6; and it is

FURTHER ORDERED that, within thirty (30) days from the date of this Order, ITT shall respond fully and completely to the plaintiff's Interrogatories Nos. 2, 3, 4, 5, 22, 25, 31, and 38 and to the plaintiff's Document Requests Nos. 13, 18, and 20, except to the extent that any of the pieces of information or documents sought by these discovery requests are protected by a valid claim of the attorney-client or work product privileges; and it is

FURTHER ORDERED that each party shall bear its own costs associated with bringing and opposing the discovery and summary judgment motions addressed herein; and it is

FURTHER ORDERED that the parties shall have until sixty (60) days from the date of this Order to complete any and all further appropriate discovery necessitated by the Court's Opinion and Order; and it is

FURTHER ORDERED that the parties shall attend a status call at 2:00 p.m., May 17, 1991.