**William G. McBRIDE, Appellant,**

v.

**MERRELL DOW AND PHARMACEUTI-
CALS, INC., an Ohio Corporation,
et al.**

**No. 85–5800.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 23, 1986.

Decided Sept. 12, 1986.

W. David Allen, Greenbelt, Md., for appellant.

H. Thomas Howell, Baltimore, and Martin J. Gaynes, with whom Sidney G. Leech and Robert X. Perry, Jr., Washington, D.C., were on the joint brief, for appellees.

Before SCALIA and SILBERMAN, Circuit Judges, and WRIGHT, Senior Circuit Judge.

SILBERMAN, Circuit Judge:

The appellant, Dr. William G. McBride, challenges the district court's dismissal of his libel action against the American Association for the Advancement of Science, publisher of *Science* magazine; *Science* reporter Gina Bari Kolata; Merrell Dow Pharmaceuticals, Inc.[1]; and several of its officers. McBride claims that *Science* published a false and defamatory story about him and that the Merrell Dow defendants disseminated the story although knowing it was false. On cross-motions of the parties, the district court entered summary judgment against McBride. *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 613 F.Supp. 1349 (D.D.C.1985). The district court held that McBride was a "public figure" for purposes of the first amendment and could not, as a matter of law, establish that the *Science* defendants acted with the requisite actual malice; the court also held that the appellant had failed to state a claim against the Merrell Dow defendants. For the reasons that follow, we affirm in part, reverse in part, and remand the case to the district court for further proceedings.

## I.

The tortuous history of this case began when the October 31, 1980 issue of *Science* featured an article by Kolata entitled "How Safe Is Bendectin?" The article discussed a Food and Drug Administration investigation that had commenced in response to widespread public concern over the pregnancy drug's alleged links to birth defects. Doctor McBride, an Australian obstetrician and expert in teratology (the study of birth defects), testified before the FDA. McBride had previously served as an expert witness for plaintiffs who challenged Bendectin's safety in a lawsuit filed against Merrell Dow in Orlando, Florida. Kolata wrote:

> These expert witnesses [at the FDA hearing] included William McBride of the Women's Hospital in Sydney, Australia, who was paid $5,000 a day to testify in Orlando. In contrast, [Merrell Dow] pays witnesses $250 to $500 a day, and the most it has ever paid is $1,000 a day.

1. Throughout this litigation, the company has been erroneously referred to as "Merrell Dow *and* Pharmaceuticals, Inc.".

McBride brought suit, claiming that this statement and several others [2] were libelous. The district court initially dismissed the case for failure to state a claim, holding that none of the statements was defamatory as a matter of law. *McBride v. Merrell Dow and Pharmaceuticals*, 540 F.Supp. 1252 (D.D.C.1982). On appeal, although affirming the district court's judgment in other respects, this court held that the above-quoted statement about McBride's expert witness fee was reasonably capable of bearing a defamatory meaning. *McBride v. Merrell Dow and Pharmaceuticals*, 717 F.2d 1460 (D.C.Cir. 1983). This court reasoned that the statement at issue, claiming that McBride was paid far more than other expert witnesses, could be read to imply that "Dr. McBride's testimony was for sale." *Id.* at 1465. This reading of the statement would convey a defamatory meaning under applicable District of Columbia law by making the plaintiff appear "odious, infamous, or ridiculous." *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C.1970). Whether the statement *in fact* conveyed that defamatory meaning presented a question for the jury. *See* 717 F.2d at 1465 (citing *Levy v. American Mutual Ins. Co.*, 196 A.2d 475, 476 (D.C.1964)). Accordingly, this court remanded the case to the district court. Mindful of the potential for harassment of the press through discovery into a journal's editorial processes, this court suggested that "discovery be limited initially to the extent feasible to those questions that may sustain summary judgment." 717 F.2d at 1467.

On remand, the district court restricted the scope of discovery to facts bearing on Doctor McBride's status as a public figure *vel non* and on McBride's expert witness fee. The court rejected McBride's effort to obtain discovery relating to the fees that Merrell Dow had paid *its* expert witnesses. The district court then granted the defendants' motion for summary judgment. Although the defendants based their motion on the ground that the fee statement was "substantially true," the district court awarded judgment on the basis of the Merrell Dow defendants' lack of knowledge of its alleged falsity and the *Science* defendants' lack of actual malice in making the statement (McBride being deemed a public figure). *See McBride*, 613 F.Supp. at 1354–57. The court reasoned that the basic truth or falsity of the fee statement could not readily be ascertained because the statement could be interpreted in different ways (according to various methods of quantifying expert witness fees). This inherent ambiguity surrounding the statement's meaning, the court concluded, precluded any inference that the statement was made with knowledge or reckless disregard of its falsity. McBride now appeals.

II.

A.

■ We begin by affirming the district court's entry of summary judgment for the Merrell Dow defendants. McBride failed to advance any reasons in his opening brief why that judgment should be reversed; he made such an argument only in his reply brief, after the appellees pointed out McBride's omission and suggested that his claim against the Merrell Dow defendants had been waived. This court ordinarily will refuse to disturb judgments on the basis of claims not adequately briefed on appeal. *See Railway Labor Executives' Ass'n v. U.S.R.R. Retirement Bd.*, 749 F.2d 856, 859 n. 6 (D.C.Cir.1984); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). We generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief. *See Environmental Defense Fund v. Costle*, 657 F.2d 275, 284 n. 32 (D.C.Cir.1981); *United States v. Haldeman*, 559 F.2d 31, 78 n. 113 (D.C.Cir.1976) (en banc) (per curiam), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53

---

**2.** One statement implied that McBride was one "of [attorney Melvin] Belli's witnesses"; the second referred to remarks by an FDA panel member suggesting that McBride's testimony was irrelevant or long-winded.

L.Ed.2d 250 (1977); *accord Matter of Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1073–74 (5th Cir.1985); *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983); *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 862 (9th Cir. 1982); *see also* Fed.R.App.P. 28(a)(4). As we stated in *Carducci*, "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." 714 F.2d at 177. Considering an argument advanced for the first time in a reply brief, then, is not only unfair to an appellee, *see Costle*, 657 F.2d at 284 n. 32, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered. *See Haldeman*, 559 F.2d at 78 n. 113.

The appellant's failure to raise the issue in timely fashion is particularly inexcusable in this case. What McBride omitted from his opening brief was not merely an argument or legal theory supporting a claim, but *any* mention of a claim against Merrell Dow. Though he disputed the district court's disposition of his libel claim against the *Science* defendants, McBride failed to address the separate legal issue implicated by his claim against the Merrell Dow defendants. This is not a situation in which an appellant incorporates by reference or otherwise "implicitly" raises a generic legal claim against all parties. It would, consequently, be patently inequitable to force Merrell Dow to defend an appeal by guessing the arguments that the appellant might make in his reply brief. We affirm the dismissal of the Merrell Dow defendants from this case.

### B.

■ We turn to McBride's claims against the *Science* defendants. The district court held that McBride is a public figure for purposes of the controversy covered by the allegedly libelous story, and thus would have to satisfy the "actual malice" standard of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686

(1964), to prevail on his claim. *See* 613 F.Supp. at 1353–54. We agree. As one who has "voluntarily inject[ed] himself ... into [the] particular public controversy" surrounding Bendectin's safety, McBride has become a public figure for the "limited range of issues" about the drug. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974); *see also Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C.Cir.), *cert. denied*, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980).

Indeed, McBride's role in the Bendectin controversy is a paradigm of the limited-purpose public figure concept. The alleged link between Bendectin and birth defects had begotten a widespread and heated public controversy over the drug's safety. *See Waldbaum*, 627 F.2d at 1296–97. McBride voluntarily entered this controversy, intending to influence its outcome. *See Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. As a world-renowned expert on birth defects—he was prominent in discovering the dangers of Thalidomide and has been dubbed the "Father of Teratology"— McBride occupied a central place in the Bendectin debate. *See Waldbaum*, 627 F.2d at 1297–98. His role included testifying before the FDA about the perceived dangers of Bendectin and serving as an expert witness in litigation challenging the drug's safety. We conclude that by vigorously taking on an important role in a current public controversy, McBride assumed public figure status for purposes of the first amendment and the consequent "risk of closer public scrutiny than might otherwise be the case." *Gertz*, 418 U.S. at 344, 94 S.Ct. at 3009.

■ As a public figure, McBride must prove that the defendants acted with actual malice to recover. Had the defendants properly advanced and supported a motion for summary judgment on that issue, McBride would face dismissal unless he could adduce sufficient evidence from which a reasonable jury could find by clear and convincing evidence that the defendants acted with actual malice. *See Ander-*

son v. Liberty Lobby, Inc., —— U.S. ——, 106 S.Ct. 2505, 2511–14, 91 L.Ed.2d 202 (1986). We cannot agree, however, that the question of actual malice was properly decided here on summary judgment. The defendants' motion was not predicated on the absence of a "genuine issue of material fact" as to their state of mind, see Fed.R. Civ.P. 56(c); they instead relied upon the asserted truth of the statement at issue. While district courts possess the authority to enter summary judgment against a party *sua sponte, see Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), that authority may only be exercised "so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* In this case, McBride was not on notice that he was obliged to marshall evidence establishing a triable issue over the defendants' actual malice or face summary judgment. Having been afforded no opportunity for discovery into the *Science* defendants' state of mind, McBride could hardly have anticipated that the time had come to put up or shut up on the question of their actual malice.[3]

The district court seems to have believed that disposition of the actual malice issue did not require factual development: *i.e.,* that even accepting as true the facts alleged in McBride's complaint, the defendants were entitled to judgment as a matter of law. The court maintained that the uncertainty of comparing fees and the ambiguity of the statement indicated that the defendants could not have acted with actual malice. *See* 613 F.Supp. at 1355. This approach, however, is inconsistent with the substantive standard governing libel suits by public figures. Actual malice refers to a state of mind: the defendant must *in fact* know the statement to be false, *see New York Times,* 376 U.S. at 279–[2]80, 84 S.Ct. at 725–26, or "[*in fact*] entertain[ ] serious doubts as to [its] truth," *St. Amant*

*v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (emphasis added), or have reckless disregard for whether it is true or false, *New York Times,* 376 U.S. at 279–80, 84 S.Ct. at 725–26. That a statement *might* have been made without actual malice does not demonstrate that it was in fact so made. Ambiguity of a statement's subject matter may be probative evidence negating a finding of actual malice, *see Time, Inc. v. Pape,* 401 U.S. 279, 290, 91 S.Ct. 633, 639, 28 L.Ed.2d 45 (1971), but it does not call forth a conclusive presumption precluding resort to actual evidence of the defendants' state of mind. And although a statement's ambiguity or susceptibility to a "true" construction may make it difficult for a plaintiff to prove that it was made with actual malice, it does not follow that such proof is impossible. Were Doctor McBride, for example, to produce a documentary "smoking gun" in which the defendants admitted that they intended to convey a false impression about his compensation, surely it would have to be conceded that the defendants acted with actual malice. A court simply has no warrant to dismiss a libel suit because it doubts that a jury will ultimately return a verdict for the plaintiff. *See Liberty Lobby,* 106 S.Ct. at 2514; *cf. Hutchinson v. Proxmire,* 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979). The district court's entry of summary judgment based on the absence of actual malice thus cannot be sustained.

While apparently conceding the foregoing, the defendants nonetheless argue that the district court's judgment may be upheld on alternative grounds. *See, e.g., Hoffa v. Fitzsimmons,* 673 F.2d 1345, 1362 (D.C.Cir.1982). They repeat their contention, which formed the basis of their summary judgment motion, that the statement about McBride's fee was "substantially true." Even more, the defendants argue, McBride's depositions reveal that the *Sci-*

---

**3.** Because we believe that the prerequisites for the entry of summary judgment on the actual malice issue were not satisfied, *i.e.,* a properly supported motion by the defendants or sufficient notice by the district court, we do not reach the question of whether summary judgment should have been denied on the ground of McBride's lack of opportunity to obtain discovery. *See Catrett,* 106 S.Ct. at 2554; *Liberty Lobby,* 106 S.Ct. at 2511 n. 5; Fed.R.Civ.P. 56(f).

*ence* article actually understated McBride's compensation for his testimony in Orlando. They maintain that McBride's fee (when computed according to the method they regard as appropriate) was closer to $5,000 per hour than the $5,000 per day reported by *Science*.

■ Because McBride bears the ultimate burden of persuading the factfinder that the statement was false, the defendants' burden of production in support of their summary judgment motion is not great. The defendants need merely " 'show[ ]'— that is, point[ ] out to the District Court— that there is an absence of evidence to support the [plaintiff's] case." *Catrett*, 106 S.Ct. at 2554.[4] But the movant for summary judgment must draw the court's attention to the lack of any genuine dispute over a material factual issue, *see* Fed.R. Civ.P. 56(c)—that is, a legally determinative issue, dispositive of all or part of the case under the governing substantive law. *Liberty Lobby*, 106 S.Ct. at 2510. In focusing only upon the amount Doctor McBride was paid, when the amounts paid to other expert witnesses was also in dispute, the defendants addressed only half of the relevant picture. A publication "must be con-

sidered as a whole" for its defamatory potential, *Howard University v. Best*, 484 A.2d 958, 989 (D.C.1984); its derogatory "gist," not its factual impreciseness, gives rise to any actionable libel. *See Afro-American Publishing Co. v. Jaffe*, 366 F.2d 649, 655 (D.C.Cir.1966) (en banc). As our prior opinion should have made clear, *see* 717 F.2d at 1465, it was the article's *comparison* of McBride's fees with those paid other expert witnesses, and not its reference to any absolute dollar amount McBride received, that could reasonably be read as defamatory. That McBride received $5,000 or more per day as an expert witness suggests mostly that he is well-paid. The libel, if any, lies in the suggestion that McBride was paid so much more than other experts that "[his] testimony was for sale." *Id.*[5] The defendant's summary judgment motion disclosed no information about Merrell Dow's expert witnesses' compensation which would suggest that the fee *comparison* was "substantially true;" nor did the defendants attempt merely to expose McBride's inability to show that the fee comparison was false.[6] The defendants moved for summary judg-

4. There appears to be some question over whether this burden is discharged by a bare allegation that the plaintiff has insufficient evidence to get to the jury, or whether something more, such as citation to relevant depositions or answers to interrogatories, is required. *See Catrett*, 106 S.Ct. at 2555 (White, J., concurring). We are not obliged to pass upon this question, however, because the defendants here have not even made a legally determinative "bare allegation."

5. The defendants argue that even this comparison is incapable of bearing a defamatory meaning. They maintain that *Howard University v. Best*, 484 A.2d 958 (D.C.1984), by citing the district court's initial dismissal of this case approvingly, supersedes this court's prior panel decision and establishes that the fee comparison is non-defamatory as a matter of law. We do not agree that *Best* requires us to depart from the law of the case. The District of Columbia Court of Appeals recited the same legal standard in *Best* that our prior panel opinion relied upon, *see id.* at 988–89, and cited the district court's vacated decision in this case only in dictum for illustrative purposes.

6. Despite being barred from deposing Merrell Dow's expert witnesses, McBride actually sought

partial summary judgment relating to the falsity of the fee comparison. McBride introduced a deposition of one of Merrell Dow's expert witnesses obtained in the Orlando litigation itself. Dr. Olli Heinonen there testified that he "guessed" that he was paid $800 to $1,000 per day for his service to Merrell Dow. McBride argues that this evidence, together with his own depositions, shows that he and Heinonen were each paid approximately $1,000 per day for each day away from his medical practice, and thus that the fee comparison is false as a matter of law. We disagree. To begin with, Heinonen's testimony is sketchy and does not clearly disclose the method by which he was estimating his fee. In any event, as the district court recognized, the "per day" fee comparison drawn by *Science* could be read as comparing expert witness compensation for days spent away from medical practices, for days spent in court, or on some other basis. If the gist of the fee comparison were "false" under one method of calculating fees but "true" under another method, the question as to *which* comparison the statement in fact conveyed would be for the jury, not the district court.

ment on an insufficient ground and thus cannot be entitled to judgment as a matter of law.

In remanding the case to the district court, we wish to emphasize that we do not declare that summary disposition of this case is inconceivable, only that it was improperly ordered here. After affording the parties adequate opportunity for discovery, *see supra* note 3, the district court may entertain properly supported motions for summary judgment. And, as this court previously suggested, it would be entirely appropriate for the district court to limit discovery initially to the potentially dispositive issue of falsity. In this way, the potentially more burdensome discovery into the defendants' editorial process entailed by exploration of the actual malice issue would become necessary only if the plain-

tiff demonstrated a triable dispute about the falsity of the fee comparison. While we repeat the suggestion of our prior panel opinion, however, we recognize that the order and timing of discovery are matters that ultimately lie within the district court's discretion.

For the reasons stated herein, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for appropriate proceedings.

*It is so ordered.*