CARNEGIE NATURAL GAS
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

UGI Corporation, New Jersey Natural
Gas Company, Intervenors.

CARNEGIE NATURAL GAS
COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

New Jersey Natural Gas Company,
UGI Corporation, Intervenors.

Nos. 90–1434, 91–1236.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 1, 1992.

Decided July 10, 1992.

Steven H. Neinast, with whom Karol Lyn Newman and Stephen O. Scandurro, were on the brief, for petitioner in 90–1434 and 91–1236.

Timm Abendroth and Howard Schneider, Attys. F.E.R.C., with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., were on the brief, for respondent in both cases. Thomas Lane, also entered an appearance for respondent.

Mary E. Baluss and Marilyn A. Specht, for UGI Corp. and Joseph M. Oliver, Jr., for New Jersey Natural Gas Co., were on the joint brief for intervenors in 90–1434 and 91–1236. Christopher J. Barr, Nicholas W. Mattia, Jr., M. Lisanne Crowley, and Jeffrey R. Clark also entered appearances for intervenors.

Before: WALD, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Petitioner Carnegie Natural Gas Company acts primarily as a middleman. It purchases most of its natural gas from a larger pipeline, the Texas Eastern Transmission Corporation, and then sells it to local distribution companies. When Carnegie's customers take less gas than Carnegie is obligated to supply to them, this puts pressure on Carnegie to take less gas than Texas Eastern is obliged to supply to it. Because Carnegie has agreed to pay inventory reservation charges to Texas Eastern when its purchases fall below a certain level, shortfalls in its customers' demand may force it to incur such charges.

In the proceedings below, Carnegie sought the Federal Energy Regulatory Commission's approval of a mechanism "designed solely to track through Texas Eastern's [inventory reservation charges] to those Carnegie customers who caused Carnegie to incur such charges." Although initially intrigued by this attempt to match cost causation with payment responsibility, the Commission ultimately rejected Carnegie's proposal. Upon close inspection, the Commission found Carnegie's premise—that it incurs inventory reservation charges because of its customers' deficient purchases—flawed. The Texas Eastern charges could also be caused by various Carnegie decisions. Since Carnegie's customers would have no opportunity under the proposal to challenge the prudence of those decisions, the Commission concluded that Carnegie's proposed inventory flow-through charge was not "just and reasonable," as section 4 of the Natural Act requires. See 15 U.S.C. § 717c(a). Carnegie now petitions for review.

Carnegie agreed to pay Texas Eastern inventory reservation charges as part of a 1988 settlement agreement. *Texas Eastern Transmission Corp.*, 44 F.E.R.C. ¶ 61,413, at 62,324 (1988); *see also Texas Eastern Transmission Corp. v. FERC*, 966 F.2d 1506 (D.C.Cir.1992).[1] Basically, the agreement requires Carnegie to purchase at least 60 percent of the annual supply specified in its contract with Texas Eastern. *Texas Eastern*, 44 F.E.R.C. at 62,325 & n. 11. Each month, Carnegie must nominate and take a certain amount of gas. If it fails to do so and has not built up sufficient credits from previous months, it must pay a charge reflecting the volume of its deficiency. If at the end of the year, Carnegie has purchased 60 percent or more of its annual supply, Texas Eastern refunds any charges Carnegie has paid. At the outset of the agreement, Carnegie had the right, which it exercised, to renominate its annual contract quantity. *Id.* at 62,324. The agreement also allows Carnegie to convert on both a daily and yearly basis a percentage of its firm sales service to firm transportation. *Id.* at 62,325.

---

1. Although we vacated the Commission order approving that agreement in *Tejas Power Corp. v. FERC*, 908 F.2d 998 (D.C.Cir.1990), the Commission allowed the agreement to remain in effect pending further proceedings before an administrative law judge. *Equitrans, Inc. v. Texas Eastern Transmission Corp.*, 53 F.E.R.C. ¶ 61,015 (1990).

Carnegie's proposed flowthrough charge operates in much the same manner. It requires Carnegie's customers to meet a certain reference level each month. (The level is higher than 60 percent because it includes cheaper Appalachian supplies Carnegie is able to produce and purchase.) If a customer does not and has not built up sufficient credits, and Carnegie incurs an inventory reservation charge, that customer must pay a flowthrough charge based upon its shortfall and Texas Eastern's inventory reservation charge. Like the Texas Eastern settlement agreement, Carnegie's proposal also contains an annual reconciliation provision. Its customers are not, however, permitted to renominate the level of their service or to convert from firm sale to firm transportation service. Furthermore, if Carnegie incurs an inventory reservation charge by purchasing gas from the spot market, and the price of that gas plus the charge is less than the price of Texas Eastern's gas, Carnegie must flow the reservation charge through to all its customers by way of its purchased gas adjustment (PGA) clause. *Carnegie Natural Gas Co.*, 45 F.E.R.C. ¶ 61,355, at 62,134 (1988); *see also* 18 C.F.R. §§ 154.301–.310.

When faced with an earlier version of Carnegie's proposal, the Commission remarked that the proposal, despite its lack of specificity, might be a "more appropriate mechanism to recover upstream inventory charges than PGA treatment" because it better advances the principle that "cost responsibility should match cost incurrence." *Carnegie Natural Gas Co.*, 49 F.E.R.C. ¶ 61,122, at 61,519 (1989). Carnegie then submitted a more detailed proposal, and the Commission ordered a technical conference to review it. *Carnegie Natural Gas Co.*, 50 F.E.R.C. ¶ 61,189 (1990). After the conference, the Commission found the proposal to be "unjust and unreasonable and not in the public interest." *Carnegie Natural Gas Co.*, 52 F.E.R.C. ¶ 61,012, at 61,093 (1990). It determined that Carnegie's deficiency-based flowthrough mechanism did not "match cost incurrence with cost responsibility" because, as Carnegie's treatment of its spot market purchases implicitly concedes, its inventory reservation charges are not always the result of deficient purchases by its customers. *Id.* at 61,092. Carnegie can cause those charges by nominating too much gas from Texas Eastern, either initially or each month; failing to convert enough service from sales to transportation; or making purchases in the spot market. *Id.* at 61,092–93.

On petition for rehearing, Carnegie argued that its crediting mechanism and use of the PGA clause for spot purchases corrected for some of the factors cited by the Commission. More generally, it contended that there was no evidence in the record indicating that it had or would make any imprudent decisions. Though acknowledging some merit in these arguments, the Commission was not persuaded. *Carnegie Natural Gas Co.*, 54 F.E.R.C. ¶ 61,333, at 62,074–75 (1991). It found Carnegie's proposal unacceptable because, *inter alia*, of its "potential to force customers to pay imprudent costs." *Id.* at 62,074. As a consequence, in the Commission's view, "the issue is not whether any particular action or decision by Carnegie was imprudent, but whether the mechanism operates to allow Carnegie's customers to challenge any potentially imprudent practices by Carnegie whether in the past or the future." *Id.* at 62,075. There being no suggestion that Carnegie's proposal allowed for such review, the Commission reaffirmed its earlier determination.

 Carnegie criticizes the Commission's decision on the ground that its proposed mechanism better matches cost causation and cost responsibility than the PGA clause currently in place. This is undoubtedly true: purchased gas adjustments do not even attempt to match causation and responsibility. There is, however, no requirement in the Act itself that rates precisely match cost causation and responsibility. Section 4(a) only requires that rates be "just and reasonable." 15 U.S.C. § 717c(a). The policy in favor of matching may be well-established (*see, e.g.,* *Alabama Elec. Coop., Inc. v. FERC*, 684 F.2d 20, 27 (D.C.Cir.1982); *see also Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n. 7, 101 S.Ct. 2925, 2930 n. 7, 69 L.Ed.2d 856

(1981)), but it is far from absolute. As we decide in another case today, the Commission may rationally emphasize other, competing policies and approve measures that do not best match cost responsibility and causation. *See, e.g., K N Energy, Inc. v. FERC*, 968 F.2d 1295, 1301–02 (D.C.Cir. 1992). Here, the Commission found Carnegie's proposal unjust and unreasonable despite its superior matching because of its potential to force Carnegie's customers to pay charges incurred as the result of Carnegie's imprudent decisions. Since the primary aim of the Natural Gas Act is to "protect consumers against exploitation at the hands of natural gas companies" (*FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 610, 64 S.Ct. 281, 291, 88 L.Ed. 333 (1944)), the Commission reasonably insisted that consumers have an opportunity to challenge costs imposed upon them. *Permian Basin Area Rate Cases*, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312 (1968); *SEC v. Chenery Corp.*, 332 U.S. 194, 208–09, 67 S.Ct. 1575, 1583, 91 L.Ed. 1995 (1947).

The Commission's factual findings were supported by substantial evidence. *See* 15 U.S.C. § 717r(b). Carnegie contends that there is no evidence in the record that it has made imprudent decisions causing inventory reservation charges. The Commission did not, however, find that Carnegie made any such decisions. Rather, the Commission concluded that if Carnegie were to make certain imprudent supply decisions, its customers would have to foot the bill. Carnegie also asserts that its spot purchases must be prudent and that its Appalachian purchases and production are subject to prudence review in connection with its base tariff and its PGA clause. 18 C.F.R. §§ 154.303(e), 154.304. But that still leaves several potential causes of inventory reservation charges—the annual contract quantity, the amount of service

converted from sales to transportation, and the monthly nomination levels—unreviewed. Furthermore, the reviews to which Carnegie refers normally occur only once a year. *See* 18 C.F.R. § 154.305. Since customers are charged monthly under Carnegie's proposed mechanism, and the rule against retroactive ratemaking might prevent the Commission from ordering refunds (*see, e.g.*, 15 U.S.C. § 717d(a); *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. at 578, 101 S.Ct. at 2931), the Commission determined that this review offers Carnegie's customers little protection.[2] *Carnegie Natural Gas Co.*, 54 F.E.R.C. at 62,074.

■ We need not consider Carnegie's criticism, both procedural and substantive, of the other rationales offered by the Commission. The Administrative Procedure Act instructs reviewing courts to take "due account ... of the rule of prejudicial error." 5 U.S.C. § 706. We will therefore sustain an agency decision resting on several independent grounds if any of those grounds validly supports the result, unless there is reason to believe the combined force of these otherwise independent grounds influenced the outcome. *See, e.g., American Fed'n of Gov't Employees v. FLRA*, 778 F.2d 850, 862 n. 19 (D.C.Cir. 1985); *Salt River Project Agric. Improvement & Power Dist. v. United States*, 762 F.2d 1053, 1061 n. 8 (D.C.Cir.1985); *New York, N.H. & H.R.R., Bondholders' Comm. v. United States*, 289 F.Supp. 418, 440 (S.D.N.Y.1968) (Friendly, J.); *see generally NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 767 n. 6, 89 S.Ct. 1426, 1430 n. 6, 22 L.Ed.2d 709 (1969) (plurality opinion). Here the Commission expressly found Carnegie's proposal "to be unjust and unreasonable as a passthrough mechanism" because it "fails to account for the possibility that Carnegie could incur a [Texas Eastern

---

**2.** In its reply brief, Carnegie suggests that if the Commission were serious about reviewing nonspot purchases, it would have conditioned Carnegie's flowthrough charges on a review of the prudence of those purchases. We do not normally consider arguments raised for the first time in a reply brief (*see, e.g., Town of Norwood v. FERC*, 962 F.2d 20, 25 (D.C.Cir.1992);

*McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210–11 (D.C.Cir.1986)), and Carnegie has offered no justification for failing to raise this argument earlier. For the same reason, we do not address Carnegie's claim that it could not cause a Texas Eastern inventory reservation charge.

inventory reservation charge] for reasons other than the purchasing practices of Carnegie's customers." *Carnegie Natural Gas Co.*, 54 F.E.R.C. at 62,074. Alone that rationale, which we uphold, supports the Commission's refusal to accept Carnegie's proposal. There is nothing to indicate that the outcome would have been different if this were the only basis for the Commission's decision.

The petition for review is denied.