36 F.3d 127
 308 U.S.App.D.C. 313
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
GTE SERVICE CORPORATION, et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents
 No. 91-1507
 United States Court of Appeals, District of Columbia Circuit.
Aug. 23, 1994.
 
 Before WALD, BUCKLEY, and GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These consolidated causes came on to be heard on petitions for review of an order of the Federal Communications Commission and were argued by counsel. On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED by the Court that the petitions for review are denied for the reasons set forth in the attached memorandum.
 
 ATTACHMENT
 MEMORANDUM
 
 3
 Various local exchange carriers petition for review of the FCC's decision in Provision of Access for 800 Service, Report and Order, 4 FCC Rcd 2824, 2825 (1989), adhered to in relevant part in Provision of Access for 800 Service, Memorandum Opinion and Order on Reconsideration and Second Supplemental Notice of Proposed Rulemaking, 6 FCC Rcd 5421, 5422 (1991), preventing LECs from selling certain vertical features--namely, alternate POTS translation and multiple carrier routing capability--directly to 800 service subscribers. The LECs argue that the FCC departed in its decision from its policies of prohibiting discrimination and promoting competition in the 800 service market, and failed to provide a reasoned explanation, supported by the record, for its decision. In response, the FCC claims that substantial evidence in the record supports its finding that "such offerings could impair the ability of the IXCs to manage their networks and unduly interfere with the IXC-customer relationship." Because the IXCs could offer vertical services to their own 800 service subscribers, the FCC also argues that restricting the sale of such features by the LECs would "further competition in the interstate 800 market" and thus comports with the agency's general policy of promoting competition.
 
 
 4
 We deny the LECs' petition for review. The LECs attacked the FCC's network management and customer relationship justifications for its decision to preclude them from providing vertical services in their opening brief merely by stating that "the Report and Order set out nothing more than a single conclusory sentence that does not even purport to state factual findings, but merely indicates 'concerns.' " This is incorrect: the FCC cited ALC's and MCI's comments describing the "unique calling pattern for 800 traffic" and the "serious network control problems [that could] occur if customers and LECs could unilaterally change the routing of 800 traffic over an IXC's network." 4 FCC Rcd. at 2843 n. 115. As set forth elsewhere in the Report and Order, MCI, ALC, and other IXCs had argued that "if BOCs are permitted to accept [interLATA 800 service] orders, IXCs will lose control over their networks, including their ability to ensure that adequate facilities are made available for each subscriber's 800 traffic," and that "800 service requires particularly careful work planning by IXCs since underestimation of a subscriber's peak 800 traffic could result in blocking within the 800 carrier's network." 4 FCC Rcd. at 2833. The FCC clearly relied upon these comments and embraced their concerns as its own.
 
 
 5
 In their reply brief the LECs argue for the first time that the FCC arbitrarily failed to respond to their suggestion on reconsideration that a notice protocol would meet the agency's concerns with regard to IXCs' controlling their network and the nature of the customer/IXC relationship. At oral argument FCC counsel acknowledged that "the Commission didn't ... address" the possibility that a notice protocol would cure the problems that provision of vertical services would cause. The FCC argued, however, that the LECs waived the argument by failing to include it in their opening brief to the court.
 
 
 6
 The LECs responded to the waiver issue at oral argument by asserting that the FCC decision under review had "reached two conclusions with no analysis at all," leaving the LECs "to file [an opening] brief trying to guess as what [sic] the Commission's logic was." As we have seen, however, the Commission did not leave the petitioners in the dark about its reasons for excluding them from direct participation in the vertical features market.
 
 
 7
 The LECs' response on the question of waiver is also inconsistent with their own argument to the FCC in the reconsideration proceeding, where they made the identical point that they raised for the first time here in their reply brief. Inasmuch as petitioner U.S. West and other parties made the notice protocol argument to the FCC on reconsideration, they could equally well have made it in their opening brief to the court.[1]
 
 
 8
 This court has stated that "[c]onsidering an argument advanced for the first time in a reply brief ... is not only unfair to an appellee but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." McBride v. Merrell Dow Pharmaceuticals, Inc., 800 F.2d 1208, 1211 (D.C.Cir.1986). Therefore, "consideration of [the LECs' notice argument] is inconsistent with the adversary process and would be 'inappropriate.' " Bradley Mining Co. v. EPA, 972 F.2d 1356, 1361 (D.C.Cir.1992), quoting In re Barr Laboratories, Inc., 930 F.2d 72, 75-76 (D.C.Cir.1991).
 
 
 9
 The LECs also claim that the FCC decision under review conflicts with the FCC's policy of nondiscriminatory provision of interstate access service as expressed in First Data Resources, Inc., 1986 FCC Lexis 3347 (Com.Car.Bur.1986) at p 5; but no conflict is apparent; that decision states only that a carrier providing interstate access service to both end users and IXC customers may not discriminate between them. As for the policy of open competitive entry, the FCC correctly states that that policy "does not preclude restrictions on the service offerings of LECs when such restrictions are found to further the public interest." Even if the FCC's decision is anticompetitive, the LECs have not, as discussed above, timely countered the FCC's assertion that its decision is in the public interest based on its network control and IXC/customer relationship concerns.
 
 
 10
 For the foregoing reasons, the LECs' petition for review is
 
 
 11
 Denied.
 
 
 
 [1]
 In their reply brief the LECs point to petitioner U.S. West's argument, in its petition to the agency for limited reconsideration, that the real network control problem was the potential of users' "chang[ing] 800 carriers unilaterally and on a real-time basis." [JA 387 n. 16] U.S. West pointed out, and the LECs reiterated in their reply brief, that advance notification would solve such a problem and was "already being considered ... by the [Ordering and Billing Forum] 800 Data Base Committee." [Id.] Two of the intervenors in this proceeding, Ameritech Operating Companies and Bell Atlantic Telephone Companies, responded similarly. See Petition of the Ameritech Operating Companies for Partial Reconsideration at 5-6 [JA 424-25]; see also Reply to Comments on Petition for Reconsideration of the Bell Atlantic Telephone Companies at 3-4 & n. 10 [JA 487-88]