Michael CROWLEY, Sandra Crowley, Appellants,

v.

NORTH AMERICAN TELECOMMUNI-CATIONS ASSOCIATION, Matthew J. Boland, Appellees.

No. 95–CV–1675.

District of Columbia Court of Appeals.

Argued Nov. 20, 1996.

Decided April 10, 1997.

Frances F. Rogala, Washington, DC, for appellants.

Charles B. Molster, III, Washington, DC, for appellees.

Before WAGNER, Chief Judge, and RUIZ, and REID, Associate Judges.

WAGNER, Chief Judge:

Appellants, Michael Crowley and Sandra Crowley, husband and wife, appeal from an order of the trial court dismissing their complaint for damages against appellees, North American Telecommunications Association (NATA) and Matthew J. Boland. On appeal, the Crowleys challenge the trial court's dismissal of counts IV (intentional infliction of emotional distress), V (defamation) and VII (loss of consortium).[1] They also contend that the trial court erred in denying their motion for leave to amend Count VI of the complaint, which alleged a violation of 29 U.S.C. §§ 1161 *et seq.* (1994) (ERISA). We affirm the trial court's dismissal of the claim for intentional infliction of emotional distress. We reverse as to the remaining counts.

### I.

The claims arise out of Michael Crowley's employment with NATA which commenced on May 9, 1994 and ended when NATA terminated him in September 1994. According to the allegations in the complaint, Crowley left a secure position to accept a contract of employment with NATA. Crowley was to be compensated, in part, by commissions based upon the amount of dues paid to the organization by new members. Crowley claimed that Boland, NATA's managing director and Crowley's supervisor, thwarted Crowley's efforts to increase NATA's membership. He contended that Boland refused to meet with him or include him in board meetings, ignored his presence, and treated him in a

hostile and unprofessional manner. At the end of ninety days, Boland gave Crowley a poor performance evaluation which Crowley refused to sign, contending that it was unfair and motivated by Boland's hostility toward him. Boland terminated Crowley, providing initially as a reason, Crowley's refusal to sign the performance appraisal and subsequently, citing his poor performance. In a proceeding before the Office of Unemployment Compensation, where Crowley was seeking unemployment compensation benefits, the appeals examiner determined that Crowley did not leave his position with NATA voluntarily and that "the evidence as a whole fails to show any misconduct on [Crowley's] part." Crowley also alleged in his complaint that on or about March 1, 1995, Boland told his employees and former co-workers that an empty bullet casing had been found in the hallway which was probably left by Crowley and that this caused injury to his business and personal reputation.

### II.

Crowley's claim for intentional infliction of emotional distress is based essentially upon the foregoing circumstances. Such circumstances are not the type for which liability may be imposed for this particular tort. *See Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)). To prove a claim of intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *District of Columbia v. Thompson,* 570 A.2d 277, 289–90 (D.C.1990), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991) (quoting *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.)) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982) (other citations

---

1. The trial court also dismissed counts alleging wrongful termination of employment, breach of covenant of good faith and fair dealing, and intentional interference with contract, which the Crowleys do not contest on appeal.

omitted). Liability will be imposed only for conduct which exceeds all bounds of decency and for acts which are regarded as "atrocious and utterly intolerable in a civilized community." *Waldon*, 415 A.2d at 1076 (citation and internal quotation marks omitted). Recovery is not allowed merely because conduct causes mental distress. *Thompson*, 570 A.2d at 290 (citations omitted).

In dismissing the complaint, the trial court properly determined that Crowley failed to allege conduct sufficiently outrageous and extreme to support a claim for intentional infliction of emotional distress. The circumstances leading to and surrounding Crowley's discharge from NATA, as alleged in the complaint, are insufficient as a matter of law to satisfy the standard for the claim. *See Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993). "Mere discharge of an employee is not 'conduct that goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Schoen v. Consumers United Group, Inc.*, 670 F.Supp. 367 (D.D.C.1986)); *see also Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 270 (D.C. 1993) (employee's dismissal without prior disciplinary procedures does not meet the standard for the tort of intentional infliction of emotional distress) (citations omitted). Essentially, Crowley alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory. *See Elliott*, 629 A.2d at 9; *Smith*, 620 A.2d at 270. Therefore, the trial court properly dismissed count IV (intentional infliction of emotional distress) for failure to state a claim. *See Wanzer v. District of Columbia*, 580 A.2d 127, 129 (D.C.1990) (dismissal for failure to state a claim is warranted when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ") (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## III.

▮ The trial court also dismissed the count of the complaint alleging defamation (slander) on the ground that the complaint failed to set forth the actual language or substance of the alleged defamatory statement. Crowley alleged that on or about March 1, 1995, Boland told NATA's employees and Crowley's former co-workers that an empty bullet casing found in the hallway was probably left by Crowley. The trial court deemed the allegations to be inadequate to state a claim, citing in support of its ruling *Watwood v. Credit Bureau, Inc.*, 68 A.2d 905 (Mun.App.D.C.1949).

In *Watwood*, the plaintiff alleged that the defendants "furnished certain written reports and information" to an individual "in which the defendants made false and libelous statements as to the financial situation of the plaintiff, as to her marital status and other libelous information which was untrue and false." 68 A.2d at 905. Noting that the complaint contained neither the alleged defamatory language nor its substance, the court determined that these mere legal conclusions were insufficient to state a claim even under our liberalized standard of pleading. *Id.* at 906.

Crowley's complaint does not suffer from the same infirmity. Unlike Watwood's complaint, Crowley's complaint contains the substance of the alleged defamatory statement. It also sets forth the date and the identification by employment of the persons to whom Boland allegedly made the statement. The factual allegations are sufficient to permit the opposing party to form responsive pleadings, the principal reason that some courts demand a heightened standard of pleading in defamation cases. *See Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979); *Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 470, 478 (D.D.C.1994); *Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991). Construing the complaint in the light most favorable to Crowley, we cannot say that " 'it appears beyond doubt that [Crowley] can prove no set of facts in support of his claim which would entitle him to re-

lief.' "[2] *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979) (quoting *Owens v. Tiber Island Condominium Ass'n*, 373 A.2d 890, 893 (D.C.1977) (quoting *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–02)).

■ NATA and Boland contend that they had a qualified privilege with respect to all of the alleged communications insofar as they were made concerning Crowley's job performance, employment status and related matters. "To be qualifiedly privileged the communication must be one made in good faith upon a subject matter 'in which the party communicating has an interest or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty....' " *Smith, supra* note 2, 399 A.2d at 220 (quoting *May Dep't Stores Co. v. Devercelli*, 314 A.2d 767, 773 (D.C.1973)). Qualified privilege is a defense to what would otherwise be considered to be defamatory. The defense of qualified privilege should be alleged and proved. Here, it is not clear from the complaint that the alleged defamatory statement was made under circumstances which indicate that the person who uttered it had a legitimate interest in making it to those who heard it. *See id.* (citing *Collins v. Brown*, 268 F.Supp. 198, 200 (D.D.C.1967)). Therefore, dismissal of the claim on that basis would not be warranted given the allegations of the complaint and the posture of the case. Thus, we conclude that the trial court erred in dismissing count V (defamation).

## IV.

In Count VI of the complaint, the Crowleys alleged that they sustained damages as a result of NATA's noncompliance with the provisions of 29 U.S.C. §§ 1161 *et seq.* (1994) (ERISA), which requires an employer to provide a discharged employee with information concerning continuation of health insurance coverage. NATA contended in the trial court that the count was subject to dismissal because the complaint failed to allege that NATA employed at least twenty employees. Apparently agreeing, the trial court dismissed that count of the complaint. The trial court deemed inadequate the Crowleys' efforts to cure any omission by praecipe, which recited that "NATA employed [20] or more employees on a typical business day during the preceding calendar year based on Michael Crowley's personal knowledge." The court noted that the praecipe, which was submitted to correct the Crowleys' opposition to the motion to dismiss, left unamended the complaint. The trial court denied the Crowleys' subsequent motion for reconsideration and to amend the complaint to add the language deemed necessary.

■ The Crowleys argue that the trial court abused its discretion in denying them leave to amend the complaint to allege that NATA employed at least twenty employees on a typical business day. The provision of ERISA at issue in this case excepts from coverage "any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." § 1161(b). We are not persuaded that the Crowleys' failure to allege that the employer does not fall within an exception to the Act is fatal to their

2. "A plaintiff bringing a defamation action ... must show: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Prins v. International Tel. and Tel. Corp.*, 757 F.Supp. 87, 90 (D.D.C.1991) (internal quotations omitted). A defamatory statement is one which " 'tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.' " *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C.1984) (quoting *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 540 F.Supp. 1252, 1254 (D.D.C.1982)) (quoting *Olinger v. American Savings and Loan Ass'n*, 133 U.S.App. D.C. 107, 109, 409 F.2d 142, 144 (1969)). We are not persuaded at this early juncture that the statement regarding possession of ammunition by Crowley, who had been fired recently, "is not reasonably capable of any defamatory meaning and cannot reasonably be understood in a defamatory sense...." *Best*, 484 A.2d at 989; *see also Curry v. Giant Food Co. of D.C.*, 522 A.2d 1283 (D.C.1987); *Smith v. District of Columbia*, 399 A.2d 213, 220 (D.C.1979).

complaint.[3] In any event, we are persuaded that the trial court abused its discretion in not allowing the Crowleys to amend the complaint.

 After the filing of responsive pleadings, leave to amend is within the discretion of the trial court. *Johnson v. Fairfax Village Condominium IV*, 641 A.2d 495, 501 (D.C.1994) (citing Super. Ct. Civ. R. 15(a) and *Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10, 13 (D.C.1983)). However, leave to amend the complaint should be given freely "when justice so requires." Super. Ct. Civ. R. 15(a). Although the decision rests within the trial court's discretion, the policy which favors resolution of cases on the merits imposes a "virtual presumption" that leave should be granted absent sound reasons which dictate a contrary result. *Johnson*, 641 A.2d at 501 (citation and internal quotation marks omitted). Among the factors we examine to determine whether the trial court abused its discretion are: (1) the number of requests to amend; (2) the length of time that the case has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party. *See id.* (citations omitted). An examination of these factors weigh in favor of the Crowleys' position. The record reflects no other request to amend the complaint. The case had been pending only a brief period when the motion to dismiss was filed. The record is devoid of any dilatory reasons for the request. Rather, the Crowleys' request appears to have been motivated solely by the desire to address the alleged fatal omission, which could be remedied readily without prejudice to the appellees. When these factors are considered with the virtual presumption in favor of granting leave to amend, and the absence of any cogent reasons for denying the request, we conclude that the trial court abused its discretion in denying it.[4]

---

**3.** *But see Alisz v. Benefit Trust Life Ins. Co.*, 874 F.Supp. 224, 229 (N.D.Ind.1994).

**4.** Appellees contend that the amendment would not have complied with the statute because the Crowleys were prepared to amend the complaint to state only that the employer had more than twenty employees at the time of the ERISA viola-

## V.

 Finally, Mrs. Crowley argues that the trial court erred in dismissing her claim for loss of consortium (Count VII). She alleged in the complaint that she was married to Crowley at the relevant time and that the conduct of NATA and Boland "caused injury to the marital relationship of the [Crowleys], including a loss of society, affection, assistance, companionship, and loss of sexual relations." Relying on *Curry, supra* note 2, 522 A.2d at 1293–94, appellees argue that a claim of loss of consortium cannot be made out absent an allegation of physical injury to the spouse. Mrs. Crowley argues that *Curry* recognizes a claim for loss of consortium based on the loss of various amenities of married life, which presumably require no physical injury.

This court has held that "a wife may recover damages for loss of consortium due to an injury negligently inflicted upon her husband and that the term 'consortium' consists not only of material services, but also affection, companionship, sexual relations, and the customary amenities of married life." *Curry, supra* note 2, 522 A.2d at 1294 (citations omitted). *Curry* does not address whether a claim for loss of consortium is strictly limited to losses related to a spouse's physical injury. Assuming that one spouse can prove that the actionable tortious conduct of another against the other spouse proximately resulted in the loss of consortium, there appears to be no basis for denying the remedy. The United States District Court for the District of Columbia seems to have recognized that recovery might be sought where the loss of consortium was based upon a defendant's dissemination of false information about the spouse. *See Wiggins v. Equifax Servs., Inc.*, 848 F.Supp. 213, 225–26 (D.D.C.1993). In *Wiggins*, the claim was rejected because the parties were not mar-

---

tion. However, the Crowleys informed the court by praecipe prior to filing the motion that they were prepared to assert that the employer had more than twenty (20) employees on a typical business day during the preceding calendar year, as the statute provides.

ried at the time of the allegedly tortious conduct, and the injury was "'known or knowable prior to their marriage.'" *Id.* at 226.

■ Although some jurisdictions recognize a cause of action for loss of consortium only where the claim is based on physical injury to the plaintiff's spouse,[5] others, including Maryland, our neighboring jurisdiction, allow recovery for injury to the marital relationship where plaintiff's spouse suffered no physical harm. *See e.g., Hudnall v. Sellner,* 800 F.2d 377, 383 (4th Cir.1986), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 960, 93 L.Ed.2d 1008 (1987) (applying Maryland law, recovery for loss of consortium allowed absent physical injury to plaintiff's spouse); *Exxon Corp., USA v. Schoene,* 67 Md.App. 412, 508 A.2d 142, 148 (1986) (recovery allowed for loss of consortium resulting from slander to the spouse); *see also Maurice v. Snell,* 632 So.2d 393, 396 (La.Ct.App.1994) (damages to wife of defamation victim allowed); *Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155, 1160–61 (1982) (claim predicated on libel and slander to spouse recognized); *Roche v. Egan,* 433 A.2d 757, 765 (Me.1981) (recovery allowed where claim based upon defamation to spouse); *Molien v. Kaiser Found. Hosp.,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 839–41, 616 P.2d 813, 821–23 (1980) (cause of action stated where loss of consortium resulted from negligent diagnosis of spouse's condition as syphillis). "A loss of consortium action provides a remedy for injury to the marital entity." *Exxon Corp.,* 508 A.2d at 148 (citing *Deems v. Western Maryland Ry.,* 247 Md. 95, 231 A.2d 514 (1967)). Where an actual loss of society incident to the marriage results from tortious conduct of another, this cause of action allows compensation in monetary damages. *See Curry, supra* note 2, 522 A.2d at 1294; *see generally Hitaffer v. Argonne Co.,* 87 U.S.App. D.C. 57,

183 F.2d 811, 816–19, *cert denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950). Given the purpose underlying a loss of consortium claim, we are persuaded that the better reasoned approach is that which allows recovery where the plaintiff proves an actual loss of services or affection as a result of an actionable tort against his or her spouse even though the latter has suffered no physical injury. *See Exxon Corp.,* 508 A.2d at 148. The resultant injury to the marriage by reason of the deprivation of society, affection and conjugal fellowship is no less because it did not result from physical harm to one spouse.[6]

For the foregoing reasons, the dismissal of Count IV (intentional infliction of emotional distress) is affirmed, and the order dismissing the remaining counts is reversed with instructions to grant the Crowleys leave to amend Count VI.

*So ordered.*

---

**5.** *See e.g., Berda v. CBS, Inc.,* 800 F.Supp. 1272, 1276 (W.D.Pa.1992); *Collins v. Willcox, Inc.,* 158 Misc.2d 54, 600 N.Y.S.2d 884, 886 (N.Y.Sup.Ct. 1992) *But See Delosovic v. City of New York,* 143 Misc.2d 801, 541 N.Y.S.2d 685, 692–93 (N.Y.Sup.Ct.1989); *see also* Restatement (Second) Torts § 693(1)(1965).

**6.** Some courts adhere to the physical injury requirement because of the difficulties presented in defending against such a claim, and "[t]he physical injury corroborates the claim of the lost services." *See e.g., Collins v. Willcox, Inc.,* 158 Misc.2d 54, 600 N.Y.S.2d 884, 886 (N.Y.Sup.Ct. 1992). However, we perceive no significantly greater burden of defense which would warrant denial of recovery absent physical injury where an actual loss of services and affection is alleged and proved.