*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CV-0273

MATTHEW BARE, APPELLANT,

V.

RAINFOREST ALLIANCE, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-006898)

(Hon. Carl E. Ross, Motions Judge)

(Argued April 8, 2025            Decided June 5, 2025)

*Philip B. Zipin* for appellant.

*J. Andres Roldan*, with whom *M. Robin Repass* was on the brief, for appellee.

Before BECKWITH, DEAHL, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In November 2023, appellant Matthew Bare sued his former employer, appellee The Rainforest Alliance, Inc., in Superior Court, accusing it of failing to pay him a "redundancy settlement"—a separation payment for employees whose positions had become redundant due to a company reorganization—that Mr. Bare and Rainforest Alliance had agreed would be paid. In exchange for this payment, Mr. Bare agreed to resign and, at the option of

Rainforest Alliance, execute a release-of-claims agreement. According to Mr. Bare, when critical comments he made about Rainforest Alliance reached its management, the company terminated him and refused to pay out the agreed settlement, in breach of contract and in violation of the District of Columbia Wage Payment and Collection Law.

Rainforest Alliance moved to dismiss Mr. Bare's suit based on his failure to allege the occurrence of an event it deemed a condition precedent: the execution of a release agreement. Nowhere in Mr. Bare's complaint, it pointed out, did he allege specifically that he signed a release agreement. Instead, Mr. Bare alleged generally that he "fully performed his obligations under his contract with [Rainforest Alliance] for redundancy pay." Despite Mr. Bare's responses that (1) the satisfaction of the condition precedent was a factual issue better suited for the summary judgment stage or trial and (2) Rainforest Alliance had waived the purported condition precedent by failing to provide a release agreement, the trial court agreed with Rainforest Alliance and dismissed Mr. Bare's complaint with prejudice.

Mr. Bare raises three arguments on appeal: (1) he needed only to (and did) comply with Superior Court Rule of Civil Procedure 9(c)'s requirements for pleading the satisfaction of conditions precedent ; (2) although not required to do so, he nevertheless plausibly alleged that Rainforest Alliance waived the condition

precedent of the execution of the release agreement; and (3) even if he was required (and failed) to so allege, the trial court should have granted him leave to amend to include additional allegations supporting his waiver theory. We embrace Mr. Bare's final argument, hold that the trial court should have granted Mr. Bare's request to amend his complaint, reverse, and remand for further proceedings consistent with this opinion.

## I.     Factual and Procedural Background

As this case comes to us on appeal from the trial court's grant of a motion to dismiss under Superior Court Rule of Civil Procedure 12(b)(6), we assume that the facts alleged in the complaint are true and construe them in the light most favorable to Mr. Bare. *Bell v. First Invs. Servicing Corp.*, 256 A.3d 246, 251 (D.C. 2021). We thus distill the below background from Mr. Bare's complaint.

### A.     The Redundancy Settlement and Mr. Bare's Termination

Mr. Bare joined Rainforest Alliance—a nonprofit organization with an office in the District of Columbia—in October 2015, eventually reaching the role of Lead, Markets Innovation. Just before Mr. Bare's eight-year work anniversary, Rainforest Alliance reorganized, which rendered Mr. Bare's role "redundant." After informing

Mr. Bare of his upcoming layoff, Rainforest Alliance offered him a redundancy settlement with the following terms:

> [Rainforest Alliance] will pay a redundancy settlement as set forth below, subject to the employee executing a release of claims, settlement agreement, or other similar agreement as provided by the Rainforest Alliance, if and as applicable and appropriate in the relevant country. The redundancy settlement will be two weeks gross base salary per year of service, with a minimum of one month and capped at six months gross base salary . . . Redundancy payments will be pro-rated to the nearest full month worked, for example, employed for 4 years and 5 months = 8 weeks + 5/12 x 2 weeks of pay.

In exchange for the redundancy settlement, Mr. Bare agreed on September 1, 2023, to resign. He chose September 22, 2023, as his last day. About a week later, Mr. Bare emailed some of his colleagues regarding his resignation and "ma[de] some observations regarding [Rainforest Alliance's] management." The next day, Rainforest Alliance terminated Mr. Bare and denied him redundancy pay.

## B. The Lawsuit and Its Dismissal

Mr. Bare filed suit two months later, bringing causes of action under the District's Wage Payment and Collection Law (DCWPCL) (D.C. Code §§ 32-1301 to -1312) and for breach of contract. In his complaint, he averred that he "fully performed his obligations under his contract with [Rainforest Alliance] for redundancy pay."

Rainforest Alliance moved to dismiss the complaint pursuant to Rule 12(b)(6), arguing that both of Mr. Bare's causes of action fail because he did not allege that he satisfied the contract's condition precedent of executing a release agreement. According to Rainforest Alliance, the nonoccurrence of the condition precedent (1) rendered the redundancy payment discretionary and therefore outside the reach of the DCWPCL and (2) prevented Rainforest Alliance's duty of performance under the contract from arising.

In opposition, Mr. Bare raised three arguments. He first contended that "the execution *vel non* of a settlement agreement is a fact issue not properly before the Court" at the Rule 12(b)(6) stage. Second, he suggested that because Rainforest Alliance never deemed a release to be "applicable and appropriate," any duty on his part to execute a release agreement was never triggered. Third, he claimed that even if he did not execute a release agreement, Rainforest Alliance waived "this erstwhile condition precedent" by failing to provide such an agreement. In addition to asserting those arguments, Mr. Bare "respectfully request[ed] an opportunity to amend" if "any portion of [Rainforest Alliance's] Motion [was] granted."

The trial court sided with Rainforest Alliance. It dismissed Mr. Bare's DCWPCL claim because, in its view, Mr. Bare could not allege that he had "earned" the redundancy payment, as required under the statute, without alleging that he had

executed a release. As for the breach-of-contract claim, the court explained that Rainforest Alliance had no duty to pay the redundancy settlement because the allegations of the complaint did not state that Mr. Bare had satisfied a condition precedent: again, executing a release. Finally, and without explanation as to why, the trial court did not grant Mr. Bare's request for leave to amend, instead ordering the case closed.

This appeal followed.

## II.    Analysis

Mr. Bare argues that (1) he needed only to—and did—comply with the requirements of Superior Court Rule of Civil Procedure 9(c) with respect to alleging the satisfaction of conditions precedent, (2) although not required to do so, he plausibly alleged that Rainforest Alliance waived the condition precedent of the release agreement, and (3) even if he was required (and failed) to so allege, the trial court should have granted him leave to amend to include additional allegations supporting his waiver theory.

A condition precedent is a contractual term setting forth "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Psaromatis v. Eng. Holdings I, L.L.C.,*

944 A.2d 472, 481 (D.C. 2008) (internal quotation marks omitted). Under District law, the occurrence of a condition precedent is an element of a claim for breach of contract. *Royal McBee Corp. v. Bryant*, 217 A.2d 603, 607 (D.C. 1966) ("Since a promisor's duty under a contract does not arise until any conditions precedent have occurred or been performed, it is incumbent on the promisee, in order to state a claim upon which relief can be granted, to allege in his complaint that all conditions have been fulfilled."); *see also CorpCar Servs. Hous. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1245 (D.C. 2024) (explaining that one of the elements of a breach-of-contract claim in the District is "an obligation or duty arising out of the contract" (internal quotation marks omitted)). *But see* 5A Charles A. Wright et al., *Federal Practice and Procedure* § 1303 & n.14 (4th ed. 2025) (opining that cases like *Royal McBee* "erroneously read[ ] and apply[ ] Rule 9(c) as imposing an affirmative duty on plaintiffs to plead conditions precedent").

It is not clear to us that the execution of a release agreement—as opposed to the execution of a release agreement *if one was provided by Rainforest Alliance because it was applicable and appropriate*—was a condition precedent to Rainforest Alliance's performance of its obligation under the contract to pay the redundancy settlement. It is arguable that, because Rainforest Alliance did not provide a release agreement, Mr. Bare's sole obligation under the contract was to resign, thereby triggering Rainforest Alliance's obligation. Mr. Bare's brief on appeal, however,

assumes that his contract with Rainforest Alliance contained a condition precedent requiring the execution of a release agreement.[1] We therefore assume without deciding that (1) the contractual provision discussing the release agreement constituted a condition precedent and (2) the complaint does not allege that this condition precedent was satisfied.

Nonetheless, we need address only one of Mr. Bare's arguments to resolve this appeal—his third. Even assuming that Mr. Bare was required to plausibly allege the occurrence of the alleged condition precedent and failed to meet that burden, the trial court erred by dismissing Mr. Bare's complaint with prejudice rather than granting him leave to amend his complaint.

## A.    Applicable Law

We review de novo a trial court's grant of a motion to dismiss under Rule 12(b)(6). *Rayner v. Yale Steam Laundry Condo. Ass'n*, 289 A.3d 387, 396 (D.C. 2023). "Dismissal is warranted only if the complaint fails to state a claim upon which relief can be granted, even accepting the allegations as true and drawing

---

[1] Mr. Bare asserted at oral argument that no condition precedent was in place because Rainforest Alliance had not provided a release agreement, but "[w]e generally do not consider arguments raised for the first time at oral argument." *Fort Myer Constr. Corp. v. Briscoe*, 298 A.3d 770, 778-79 (D.C. 2023) (internal quotation marks omitted).

all reasonable inferences in favor of the plaintiffs." *Colbert v. District of Columbia*, 304 A.3d 199, 203 (D.C. 2023). Yet Rule 12(b)(6) is not toothless—to survive a motion to dismiss, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Our review is more deferential with respect to a trial court's decision whether to grant the plaintiff leave to amend a dismissed complaint—we review that decision for abuse of discretion. *Rayner*, 289 A.3d at 401. When determining whether a trial court acted within the bounds of its discretion, we weigh "five factors: '(1) the number of requests to amend; (2) the length of time that the case has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party.'" *Id.* at 401-02 (quoting *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1174 (D.C. 1997)). And we place a thumb on the scale in favor of granting amendment requests; indeed, we impose "a virtual presumption that leave should be granted absent sound reasons which dictate a contrary result." *Crowley*, 691 A.2d at 1174 (internal quotation marks omitted).

This presumption is not our own invention; instead, it is codified in Superior Court Rule of Civil Procedure 15(a), which requires a trial court to "freely give leave [to amend] when justice so requires."[2] And Rule 15 itself is a manifestation of the policy—underlying not only our own pleading rules but also the Federal Rules on which they were modeled—"reject[ing] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept[ing] the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Crowley*, 691 A.2d at 1174 (explaining that this court's presumption in favor of allowing amendment stems from "the policy which favors resolution of cases on the merits"); 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1471 (3d ed. 2025) ("[Rule 15's]

---

[2] A separate rule, 41(b)(1)(B), provides that, unless a dismissal order states otherwise, a dismissal by the court "operates as an adjudication on the merits." Super. Ct. Civ. R. 41(b)(1)(B). And "[b]ecause 'an adjudication on the merits' is synonymous with a dismissal with prejudice, a trial court that dismisses a case under Rule 12(b)(6) without stating whether it is with or without prejudice operates as a dismissal with prejudice." *Colvin v. Howard Univ.*, 257 A.3d 474, 485 (D.C. 2021) (internal quotation marks omitted). We have never suggested, however, that, at least where a plaintiff has sought leave to amend, Rule 41(b)(1)(B) undercuts Rule 15(a)(3)'s permissive standard and the applicability of the *Crowley* factors in cases involving Rule 12(b)(6) dismissals. *Cf. Rayner*, 289 A.3d at 401 (applying Rule 15(a)(3) and *Crowley* in reviewing a denial of leave to amend following a Rule 12(b)(6) dismissal (although finding no abuse of discretion)).

purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.").

To underscore this point, forgive us a brief history lesson. At common law, courts relied on technical pleading rules to reduce disputes to "a single issue of law or fact that would dispose of the case." 5 Charles A. Wright et al., *Federal Practice and Procedure* § 1202 (4th ed. 2025). These pleading rules created "a maze of rigid, and often numerous, stages of denial, avoidance, and demurrer" that, although "wonderfully scientific," "proved to be excruciatingly slow, expensive, and unworkable"—"better calculated to vindicate highly technical rules than it was to dispense justice." *Id.*

The Federal Rules of Civil Procedure—and, in turn, our corresponding Superior Court Rules—were adopted to eliminate these pitfalls. *See id.* Under these rules, rather than proceed through a series of complex pleading stages, parties in their pleadings need only provide

> a general summary of the party's position that is sufficient to advise the other party of the event being sued on, to disclose enough information to confirm that the allegations reveal an entitlement to relief, to provide some guidance in a subsequent proceeding as to what was decided for purposes of res judicata and collateral estoppel, and to indicate whether the case should be tried to the court or to a jury.

*Id.* (footnote omitted). Under this system, the job of weeding out cases that, although plausible upon first viewing, ultimately lack merit falls to summary judgment. *See id.*

Of course, pleading retains some gatekeeping function—to reach discovery a party must allege sufficient factual matter to state a plausible claim for relief. *Potomac Dev. Corp.*, 28 A.3d at 544. But the above history—and Rule 15 itself—teaches that a party's initial failure to so allege should not preclude an attempt to rectify the pleading's initial deficiencies. If that were not so, we would be left with the very consequence that the pleading rules were designed to avoid—lawsuits dismissed not on their merits, but instead for the plaintiff's failure to meet, on her first try, a technical pleading requirement.

Federal courts applying their versions of Rules 15, 8, and 12(b)(6)—the models for our own versions—confirm the above conclusion. They have made clear that, in the absence of undue delay, bad faith, or dilatory motive on the part of the plaintiff, "leave to amend the complaint should be refused only if there is no basis for concluding that the plaintiff can state a [plausible] claim and thus permitting an amendment would be futile." 5B Charles A. Wright, *Federal Practice and Procedure* § 1357 (4th ed. 2025); *e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *Ariz. Students' Ass'n v. Ariz.*

*Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff *may be* a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." (emphasis added)).

And, although we have not yet articulated the above rule in these precise terms, it aligns with our current approach. Compare the above rule—allowing amendment unless futile, preceded by undue delay, motivated by bad faith, or infected with dilatory motive—with our court's *Crowley* factors (considering, inter alia, "the presence of bad faith or dilatory reasons for the request" and "the merit of the proffered amended pleading"). 691 A.2d at 1174. This comparison reveals that our approach to amendment requests—just like that of the federal courts of appeals—focuses on (1) whether the party seeking amendment is abusing the court system and (2) whether amendment would be futile.[3]

Confident, therefore, that we make no change in the law with this pronouncement, we now for the sake of clarity hold the following: in the absence of bad faith or undue delay and the related prejudice it causes the defendant, trial courts

---

[3] Take, for instance, *Crowley*'s instruction that trial courts consider the number of previous amendment requests. 691 A.2d at 1174. This factor goes to both abuse and futility—each time a plaintiff fails to state a plausible claim for relief, it both taxes the judicial system and becomes less likely that the plaintiff will succeed if given another attempt.

should not deny motions to amend (or their functional equivalent) unless the plaintiff cannot allege additional facts sufficient to state a plausible claim for relief.

Before we apply this standard to the amendment request in this case, we pause to address one last point. Some of this court's cases could be read to endorse a more stringent approach to amendment requests than the above. *See May v. River E. at Grandview*, 322 A.3d 557, 576 (D.C. 2024) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought[—] . . . will [not] compel a remand for leave to amend." (internal quotation marks and citations omitted)); *Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 981 (D.C. 2023) ("[O]nly in exceptional circumstances have we said that a trial court must invite a plaintiff to amend his or her complaint when the plaintiff has not sought such amendment." (internal quotation marks omitted)); *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 250 (D.C. 2016) (discerning no abuse of discretion in the trial court's denial of leave to amend because the appellant did not "proffer[ ] the substance of her proposed amendment," even on appeal).

But we do not read these cases as so strict. Instead, they appear to stand only for the uncontroversial proposition that "[d]enial of leave might be proper where a plaintiff's request was inconspicuous and never brought to the court's attention or

where the request gives no clue as to how the complaint's defects would be cured." *Loreley Fin.*, 797 F.3d at 190 (citations and internal quotation marks omitted). In that sense, these cases too speak to "underlying issues like notice and futility"—a trial court cannot determine whether amendment is futile without knowing what amendment a plaintiff might seek to make. *See id.* at 190-91. These cases are thus not in tension with the approach we outline above.[4]

---

[4] One additional aspect of our decision in *Tingling-Clemmons* deserves mention. Although we rested our affirmance of the trial court's denial of leave to amend on the plaintiff's failure to proffer the substance of her proposed amendment, we also implied that because the plaintiff could have amended her complaint before the trial court ruled it insufficient, it was not unfair for the trial court to deny her leave to amend after such a ruling. 133 A.3d at 251 ("[A]ppellant was not entitled to wait and see the trial court's decision before amending her complaint[;] [s]he was not entitled to an advisory opinion from the [c]ourt informing [her] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." (fifth alteration in original) (internal quotation marks and footnote omitted)).

We consider this latter implication to be dictum—we intended to point out only that the appellant could not "complain that she was treated unfairly." *Id.* at 251; *see Parker v. K&L Gates, LLP*, 76 A.3d 859, 873-74 (D.C. 2013) (Ferren, J., concurring for a majority of the court) (concluding that a prior opinion's statement was dictum because the court had "found it interesting, perhaps even comforting, to note" it, "but [it was not] a 'necessary' ingredient of the outcome"). Had we in *Tingling-Clemmons* held that amendment is not permitted once a trial court grants a Rule 12(b)(6) motion, that holding would have been inconsistent with Rule 15 and *Crowley*. 691 A.2d at 1173-74 (reversing a trial court for denying a plaintiff leave to amend *after* it had granted a motion to dismiss). Indeed, our cases have not interpreted *Tingling-Clemmons* in such a manner; instead, we have expressly rejected a one-strike-and-you're-out approach to pleading. *See Andrews v. D.C. Hous. Auth.*, 316 A.3d 469, 474 (D.C. 2024) ("The conclusion that a plaintiff can never use a motion to amend to resuscitate a count that has been dismissed is contrary to the text of Rule 15 . . . .").

## B. Discussion

We now proceed to apply the above principles to this case—specifically, by balancing the *Crowley* factors. The first, second, third, and fifth factors can be quickly dispensed with here. Mr. Bare's amendment request was his first; the case had been pending for approximately one month at the time the motion to dismiss was filed; "the record is devoid of any dilatory reasons for the request," *see Crowley*, 691 A.2d at 1174; and neither party identifies any prejudice that Rainforest Alliance might suffer if Mr. Bare were granted leave to amend. Accordingly, the above factors weigh in favor of amendment. *See id.*; *Andrews*, 316 A.3d at 476-77.

That leaves factor four—the merit of the proffered amendment. *Crowley*, 691 A.2d at 1174. Rainforest Alliance raises two arguments with respect to this factor, the second of which has two parts. First, it argues that because Mr. Bare did not formally move for leave to amend but instead requested leave to amend in his opposition to the motion to dismiss, Mr. Bare did not provide the trial court with sufficient notice of his amendment request. Second, it contends that Mr. Bare's proposed amendment would be futile, as (1) Mr. Bare cannot allege that Rainforest Alliance acted in bad faith when it declined to provide him with a release agreement and (2) Mr. Bare's (supposed) at-will employee status meant that Rainforest

Alliance's decision to fire him cannot have breached the contract. We disagree with Rainforest Alliance on all points.

We begin with Rainforest Alliance's contention that Mr. Bare should have moved for leave to amend. To be sure, Superior Court Rule of Civil Procedure 7(b)(1) requires that a "request for a court order . . . be made by motion." But our precedent reveals that we approach Rule 7(b)(1)'s requirement with flexibility; in addition to a formal motion requesting leave to amend, we accept the functional equivalent of such a motion. *See Keith v. Washington*, 401 A.2d 468, 471-72 (D.C. 1979) (holding that, even where the plaintiff "did not formally move to amend," the trial court abused its discretion by not considering his amendment request); *Pellerin v. 1915 16th St., N.W., Coop. Ass'n*, 900 A.2d 683, 688 (D.C. 2006) ("Even though [the plaintiff] did not formally move for leave to amend her complaint . . . , precedent in this jurisdiction teaches that the trial court still was obliged to consider whether to allow it."); *May*, 322 A.3d at 576 (holding not that a "bare request" (no pun intended) for leave to amend made in an opposition to a motion to dismiss was per se insufficient, but instead that the request failed because it did not provide "any indication of the particular grounds on which amendment [was] sought" (internal quotation marks omitted)). Federal courts of appeals concur. *See Loreley Fin.*, 797 F.3d at 190 ("Generally, we will not deem a request for leave to amend insufficient on the basis of form alone."); *Calderon v. Kan. Dep't of Soc.*

*& Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A party's] failure to file a formal motion is not always fatal[ ] [so long as] there was readily apparent notice to opposing parties and to the court of both the desire to amend and the particular basis for the amendment . . . ." (citations omitted)). Rather than mandate a particular means of requesting leave, therefore, we will instead ask whether the way in which Mr. Bare chose to request leave gave the trial court sufficient notice both of his desire to amend and of the nature of his proposed amendment.

We answer the above question in the affirmative. Rainforest Alliance cannot realistically claim that Mr. Bare failed to provide the trial court with notice of his amendment request—it encouraged the trial court to deny Mr. Bare leave to amend in its own reply. And turning to the substance of the proffered amendment, Mr. Bare made that clear in his opposition—he would add allegations supporting the reasonable inference that Rainforest Alliance waived the alleged condition precedent (the execution of a release agreement) by failing to provide Mr. Bare with the agreement. Indeed, the trial court recognized this theory in its order dismissing the case with prejudice. The trial court thus should have been on notice both of Mr. Bare's request for leave to amend and of the substance of his proposed amendment.

One question thus remains: was Mr. Bare's proposed amendment futile? The trial court in its dismissal offered no explanation for why Mr. Bare's proposed amendment would lack merit.[5] For its part, Rainforest Alliance raises two futility arguments.

First, although Rainforest Alliance recognizes that the nonoccurrence of a condition precedent "is normally excused when fairly attributable to the promisor's own conduct," *In re Est. of Drake*, 4 A.3d 450, 454 (D.C. 2010) (internal quotation marks omitted), it contends that this "prevention" doctrine applies only where the party alleged to have prevented the condition's occurrence acted in bad faith. According to Rainforest Alliance, because Mr. Bare cannot possibly allege bad faith, any attempt by him to amend on prevention grounds would be futile.

True, the prevention doctrine is an offshoot of the implied duty of *good faith* and fair dealing, which applies to all parties to a contract by default. *Id.* at 455 n.21. But Rainforest Alliance advances a blinkered view of what constitutes a violation of this duty. A finding of bad faith need not be premised on the "active interference of the promisor"; instead, the mere "failure to cooperate in performance" can suffice.

---

[5] Where it is not clear whether a trial court analyzed an amendment request, we will often remand for the trial court to exercise its discretion in the first instance. *See Keith*, 401 A.2d at 472. But we need not take that approach if, on the record before it, "the trial court had only one option." *Johnson v. Payless Shoe Source, Inc.*, 841 A.2d 1249, 1257 (D.C. 2004). This is such a case.

*Aronoff v. Lenkin Co.*, 618 A.2d 669, 682 (D.C. 1992); *see also Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006) (explaining that bad faith includes a "lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance" (internal quotation marks omitted)); *Est. of Drake*, 4 A.3d at 455 (holding that the trial court correctly applied the prevention doctrine because the *failure to act* by the party against whom the doctrine applied constituted bad faith).

Mr. Bare accuses Rainforest Alliance of refusing to cooperate in his performance—specifically, of refusing to provide him with a release agreement. This accusation, if added to Mr. Bare's complaint, could allow a factfinder to reasonably infer the requisite bad faith on Rainforest Alliance's part. *See In re Deepwater Horizon*, 786 F.3d 344, 361 (5th Cir. 2015) ("BP's refusal to send Johnson the Release excuses his failure to sign it. . . . [T]he GCCF—and, by extension, BP—prevented Johnson from signing the Release . . . ."). We therefore reject Rainforest Alliance's first futility argument.

Rainforest Alliance's second futility argument fares no better. It argues that because it had the right to terminate Mr. Bare at any point,[6] it could not have

---

[6] Because nowhere in Mr. Bare's complaint does he allege that he was an at-will employee, any argument grounded in Mr. Bare's purported at-will-employee

breached its alleged contract with him by terminating him, even if that termination ended up preventing him from securing his redundancy payment. The problem with this argument is that, under the contract as alleged, Mr. Bare's termination in no way prevented him from performing his end of the bargain. According to the complaint, Mr. Bare would receive a redundancy payment so long as he (1) agreed to resign and (2) signed a release agreement at Rainforest Alliance's option. Mr. Bare's post-acceptance termination has no bearing on Mr. Bare's ability to perform these two requirements—Mr. Bare had already agreed to resign before being fired and could execute a release agreement after being fired. Accordingly, Rainforest Alliance's unfettered power (or lack thereof) to fire Mr. Bare is irrelevant to whether it owes Mr. Bare the redundancy payment.[7]

---

status is premature. *See Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) ("[A] defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself." (alteration in original) (internal quotation marks omitted)). But, as our analysis in this opinion reveals, even if we assume that Mr. Bare was an at-will employee, Rainforest Alliance's argument fails.

[7] At oral argument, Rainforest Alliance asserted that the contract was contingent on Mr. Bare's continued employment with Rainforest Alliance until his resignation date. At risk of sounding like a broken record, though, it is the allegations of the complaint, and not Rainforest Alliance's assertions, that control. Because nothing in the complaint suggests that the contract would be void if Rainforest Alliance terminated Mr. Bare prior to his resignation date, Rainforest Alliance's unsubstantiated assertions regarding the contract do not justify affirming the trial court's dismissal.

As Mr. Bare's proposed amendment would rectify the flaw on which the trial court relied to dismiss the complaint, the fourth *Crowley* factor, like factors one through three and five, weighs in favor of amendment. And because all *Crowley* factors thus weigh in favor of allowing amendment, the trial court abused its discretion by instead dismissing Mr. Bare's complaint with prejudice. *See Andrews*, 316 A.3d at 476-77.[8]

### III. Conclusion

For the foregoing reasons, we reverse the trial court's dismissal with prejudice; hold that the trial court should have granted Mr. Bare's request to amend his complaint; and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[8] The trial court dismissed both counts of Mr. Bare's complaint based on its conclusion that he had failed to allege the satisfaction of a condition precedent, and Rainforest Alliance's arguments to this court are grounded in that same conclusion. We thus conclude that the trial court should have granted leave to amend with respect to both counts. In so holding, we express no opinion on whether either count is subject to dismissal for reasons other than those relied upon by the trial court.